Ken Wise, Justice
In this accelerated appeal from a final decree of divorce terminating appellant's parental rights to his four children, appellant challenges the sufficiency of the evidence supporting the predicate grounds *729 for termination and the finding that termination is in the children's best interest. Appellant also contends that the trial court abused its discretion by considering hearsay testimony and by refusing to admit appellant's psychological evaluation after appellee allegedly "opened the door." Lastly, appellant contends that the trial court improperly awarded child support to the children's amicus attorney after terminating appellant's parental rights. We modify the judgment and affirm as modified.
FACTUAL BACKGROUND
The parties to the divorce will be referred to as "Father" and "Mother" for purposes of this opinion. Father and Mother were married in 2004, and they had four children during the marriage: R.H.W. III (R.H.W.), M.H.W., K.H.W., and T.H.W. Father and Mother stopped living together in July 2014, allegedly when all four children made outcries to Mother that they had been sexually abused by Father. Mother filed for divorce in January 2015.
Father, then a doctor pursuing a medical residency, was arrested in January 2016 on four felony sexual-abuse charges. Contemporaneously, the criminal district court in which the cases were pending issued a "no contact" order prohibiting Father from any contact with the children. Father's medical license was suspended, as was his residency.
A trial was held before the court over three days in December 2016. At the time, Father had not yet gone to trial on the criminal offenses.[1] The trial court appointed an amicus attorney to assist the court in protecting the best interest of the children.
Mother testified that she was seeking a divorce from Father on the grounds of adultery and cruelty towards her and the children, and that she was also requesting that Father's parental rights be terminated. Mother explained that she decided to seek a divorce in 2014, when she found out that Father sexually abused the children.
Mother first became suspicious in July 2014, when T.H.W., then about three years old, told Mother that Father touched her "right here" while pointing to her vaginal area. Mother confronted Father, but he denied doing anything like that and told her that he only touched the children to wash them during bath time. Mother initially believed Father's explanation.
Later, when the children began to appear afraid of Father and "things were just not feeling right," Mother asked Father what was going on. According to Mother, Father "broke down" and admitted that he would watch pornography and then get the children out of their rooms at night and have them touch one another. Father also would touch them. Father said that he would get erections when their daughter sat on his lap. Father also told Mother that when he did not get what he was looking for from the children, he would come to Mother "as a last resort." Father wrote letters to each of the children in which he apologized to them for letting them down as a father. Father acknowledged "inappropriate touching" and described it as "wrong," "unacceptable," and "illegal." Father also apologized for hurting, bullying, and intimidating the children. In one of the letters, Father stated, "What I have done to you is unacceptable and downright evil." In another, Father stated, "You and your brother and sisters could be taken away, with me being sent to jail." Mother testified that the letters confirmed *730 to her that Father sexually abused the children.
Mother testified that she contacted Child Protective Services (CPS) about the abuse and an investigator came to the home to interview her. Additionally, each of the children had forensic interviews at the Children's Assessment Center. After the interviews, Mother stated that she was advised to take the children to a therapist. Mother testified that, since that time, the children have been seeing a therapist regularly.
CPS also referred the cases to the district attorney's office, and criminal charges were subsequently brought against Father. The criminal complaints in evidence alleged the following felony offenses against Father: (1) super-aggravated sexual assault of a child under six years of age for intentionally and knowingly causing the penetration of the anus of M.H.W. with Father's finger; (2) indecency with a child by touching the anus of T.H.W. with the intent to arouse and gratify the sexual desire of Father; (3) indecency with a child by touching the genitals of K.H.W. with the intent to arouse and gratify the sexual desire of Father; and (4) continuous sexual abuse of a child by committing acts of indecency by contact against R.H.W. in 2011 and 2013.
Mother testified that the children were having behavioral problems which she believed resulted from Father's abuse. She also explained that when Father's arrest was publicized in the news, she received calls and messages from people asking about it. Because their last name was uncommon and an internet search of it would reveal the charges against Father, Mother wanted the children to be given new names. Mother stated that the children already had chosen the names they wanted.
Mother stated that she had not allowed Father to have unsupervised visits with the children since he admitted what he had done. Mother believed that Father's inappropriate touching, as described in his letters, placed the children in a dangerous environment. Mother testified that the children were traumatized and scarred by the sexual molestation, and she stated that it would devastate them to remain connected to the man who molested them. Mother believed that Father had endangered the children's physical and emotional well-being by sexually molesting them. In Mother's opinion, it would be in the children's best interest for Father's parental rights to be terminated.
On cross-examination, Mother admitted that she never saw Father sexually abuse any of the children, and she did not suspect abuse until the children made outcries to her in 2014. According to Mother, after Father admitted abusing the children, he repeatedly apologized to her. Mother told him to apologize to the children rather than to her and to put it in writing, and that is when Father brought her the letters he wrote to the children. Mother denied telling Father to write the letters so that she could use them in the divorce proceedings for settlement, and denied telling Father the details to write. Mother acknowledged, however, that she did not give the letters to the children to read, nor did she read them to the children.
The children's therapist, Carol Sepulveda, also testified. Father objected to Sepulveda testifying as an expert, and the trial court sustained the objection because Mother had not designated Sepulveda as an expert witness. Thus, Sepulveda was permitted to testify as a fact witness only.
Over Father's objection, Sepulveda stated that she was seeing the children "because they had been sexually abused." Sepulveda testified that R.H.W., the oldest *731 child, told her that Father started sexually molesting him at the age of three, and that Father also had the children molest one another in his presence. R.H.W. said it began when Father was bathing him and would start to fondle him. R.H.W. stated that he felt embarrassed about what had happened to him and was ashamed that people in the community found out about it when it was publicized. The younger children also indicated to Sepulveda that Father would have them touch one another, and their communication with her gave her the impression that the touching would happen in the bathroom when they were bathed. The children also described Father making R.H.W. penetrate another child.
Saundre Dickinson, a licensed marriage and family therapist, was called to testify by the children's amicus attorney, Bobbie Young. Dickenson was permitted to testify only as a fact witness, however, because she had not been designated as an expert witness.
Dickinson first met Mother and Father in 2006, and she saw them individually and as a couple through 2012. Since 2012, she had seen only Mother. Dickinson testified that in their first session with her, Father said, "I have a sexual compulsive problem." When gathering background information from Father, Dickinson said that Father told her that his mother was not there for him much, that she saw men, and that she had problems with drugs. When Dickinson asked Father if his mother ever left him with any of the men, he just shrugged his shoulders and did not answer. In the sessions, the couple would discuss Father's multiple affairs. Dickinson testified that in 2012, Father agreed to go to an inpatient sexual rehab facility. No evidence was presented that Father did so.
Father testified that he and Mother had R.H.W. about a year after they were married. Father was working on his Ph.D. at the time. He and Mother then had another son and two daughters. Mother and Father supported the family with work income and Father's student loans. Once Father went to medical school, Mother became the primary caretaker for the children and, according to Father, was an "excellent mom." Mother started her own business and took care of the children and the home. Once Father began his medical residency, he worked long hours and had little time to spend with the family.
Father testified that he made time to spend with the family when he could. He always cut the boys' hair, and sometimes he would take the children for ice cream or they would go to a park or the zoo. He also participated in the children's educational and extracurricular activities. As Father's medical residency progressed, he and Mother grew more apart and did not talk to each other much except about the children. But, Father stated that his relationship with the children remained good. By 2014, the marriage became strained to the brink of divorce because of his infidelity. Nevertheless, Father maintained that the children continued to do well, although he acknowledged some of them had occasional behavioral problems.
Father testified that he loved his children dearly and had never done anything to hurt them. He stated that he was able to care for his children by working, providing for them economically, and being there for them emotionally. Father did not want to give up his children and denied ever physically hurting them. Father requested a joint managing conservatorship with Mother and a standard visitation order. Father also submitted a proposed parenting plan. Although Father admitted that he was not currently "hireable" in any of his fields of study due to the public nature of the accusations against him and the suspension of his medical license, he currently *732 was working odd jobs and intended to find a way to continue meeting his child support obligations.
Father testified that he believed it was in the children's best interest that he remain their father. He also thought it was important that the children keep his name, because he had worked hard to make that name mean something and he was proud of it. Father denied abusing any of the children. Although he did not believe there was any hope of reconciling with Mother, Father testified that he "would do whatever it takes" to be able to parent his children and take care of them. When asked on cross-examination whether he believed that his children had been sexually molested, Father stated that he believed that R.H.W. did touch the girls, but he acknowledged that he did not report it.
At the conclusion of the trial, the court orally granted the parties a divorce on the grounds that Father had committed adultery and acts of cruelty towards Mother and the children. The trial court also divided the parties' marital estate, terminated Father's parental rights to all four children, granted name changes for Mother and each of the children, and ordered Father to pay Mother's attorney's fees. Additionally, the trial court approved Mother's and Father's stipulation on the record that each would pay one-half of the attorney's fees charged by the amicus attorney.
The trial judge signed a final decree of divorce consistent with the judge's oral rendition on February 16, 2017. This accelerated appeal followed. See Act of May 5, 2011, 82nd Leg., R.S., ch. 75, § 3, 2011 Tex. Sess. Law Serv. 348, 349 (effective September 1, 2011) (amended 2017) (current version at Tex. Fam. Code § 109.002(a-1) ).
FATHER'S ISSUES
Father presents six issues for review. In issues one and two, Father contends that the evidence is legally and factually insufficient to establish by clear and convincing evidence the predicate findings supporting involuntary termination of his parent-child relationship with each of the children. In issue three, Father contends that terminating his parental rights is not in the best interest of the children. In issue four, Father contends that the trial court abused its discretion by improperly considering hearsay and opinion testimony from Sepulveda. In issue five, Father contends that the trial court abused its discretion by refusing to admit into evidence a psychological evaluation prepared at Father's request by Dr. Stephen Thorne after Mother's counsel purportedly "opened the door" to this testimonial evidence. Finally, in issue six, Father contends that the trial court improperly awarded the amicus attorney's fees to be paid by Father as additional child support after terminating his parental rights. We address each issue in turn.
I. Issues One and Two: Sufficiency of the Evidence to Support the Predicate Findings for Involuntary Termination
The trial court found by clear and convincing evidence that Father (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; and (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children. See Tex. Fam. Code § 161.001(b)(1)(D)-(E). Father challenges the legal and factual sufficiency of the evidence to support both findings.
A. Burden of Proof and Standards of Review *733 In proceedings to terminate the parent-child relationship under section 161.001 of the Family Code, the petitioner must prove by clear and convincing evidence that the parent has engaged in at least one statutory ground for termination under subdivision (1) of the statute, and also must prove that termination is in the child's best interest. Tex. Fam Code § 161.001(1), (2) ; In re A.B. , 437 S.W.3d 498, 504-05 (Tex. 2014). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007 ; In re J.O.A. , 283 S.W.3d 336, 344 (Tex. 2009). Termination may not be based solely on the best interest of the child as determined by the trier of fact. A.B. , 437 S.W.3d at 505.
"The natural right existing between parents and their children is of constitutional dimensions." Holick v. Smith , 685 S.W.2d 18, 20 (Tex. 1985). Parents have a fundamental right to make decisions concerning "the care, custody, and control of their children." Troxel v. Granville , 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Because the termination of parental rights implicates these fundamental interests, a higher standard of proof, i.e., clear and convincing evidence, is required. A.B. , 437 S.W.3d at 502. Nevertheless, although parental rights are of constitutional magnitude, they are not absolute, and the child's emotional and physical interests must not be sacrificed merely to preserve the parent's rights. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).
In a legal-sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven. See In re J.P.B. , 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). We assume the fact finder resolved disputed facts in favor of the finding, if a reasonable fact finder could do so, and disregard evidence that the fact finder reasonably could have disbelieved or found to have been incredible. See ids="8999072" index="11" url="https://cite.case.law/sw3d/180/570/#p573">id. We defer to the fact finder's determinations of witness credibility, so long as those determinations are reasonable. Id.
In a factual-sufficiency review, we give due consideration to evidence the fact finder reasonably could have found to be clear and convincing. In re J.F.C. , 96 S.W.3d 256, 266 (Tex. 2002). We must determine "whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the ... allegations." Id. (quoting C.H. , 89 S.W.3d at 25 ). "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." Id. We are therefore required to engage in an "exacting review of the entire record when a parent challenges a termination order for insufficient evidence." A.B. , 437 S.W.3d at 505. The fact finder is the sole arbiter of a witness's demeanor and credibility. Id. at 503.
B. Legal Sufficiency of the Evidence to Support Termination of Father's Parental Rights under Family Code Section 161.001(E)
In his first issue, Father contends that the evidence does no more than support an inference that Father was suspected of sexually abusing the children. Consequently, Father maintains, the evidence is legally insufficient to support either of the trial court's predicate findings.
*734 Only one predicate finding under section 161.001 is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. In re A.V. , 113 S.W.3d 355, 362 (Tex. 2003). Accordingly, we will address the trial court's predicate findings under section 161.001(E).
"Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act." In re J.T.G. , 121 S.W.3d 117, 125 (Tex. App.-Fort Worth 2003, no pet.) ; see also In re S.M.L. , 171 S.W.3d 472, 477 (Tex. App.-Houston [14th Dist.] 2005, no pet.). In this context, endanger means "to expose to loss or injury; to jeopardize." In re T.N. , 180 S.W.3d 376, 383 (Tex. App.-Amarillo 2005, no pet.) (quoting In re M.C. , 917 S.W.2d 268, 269 (Tex. 1996) ). A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. S.M.L. , 171 S.W.3d at 477.
Father first contends that Mother failed to meet her burden to show by clear and convincing evidence that Father sexually abused the children because neither Mother nor the amicus attorney presented any direct evidence of sexual or physical child abuse committed by Father. Specifically, Father argues that the children did not testify, no medical evidence of physical or sexual abuse was presented, and no testimony, reports, or other evidence was offered or admitted from the Department of Protective and Regulatory Services of abuse against the children.
Father is incorrect in his assessment of the record evidence. Father's letters to the children, which he does not deny writing, were direct evidence of Father's admissions that he engaged in "illegal" and "wrong" actions, including inappropriately touching, violating, hurting, bullying, and intimidating each of the children. Although Father testified at one point that by "inappropriate touching" he meant spanking, the trial court was free to disbelieve Father's testimony. See A.B. , 437 S.W.3d at 503.
In addition, the criminal complaints were admitted into evidence without objection. Each complaint included a probable cause affidavit by a Harris County Sheriff's Office investigator, in which the investigator explained that he reviewed the forensic interview of each child, and recounted the details of each interview in specific and graphic detail. The investigator also averred that he interviewed Mother, whom he found to be "credible and reliable." Unobjected-to hearsay is, as a matter of law, probative evidence. Tex. Commerce Bank, Nat'l Ass'n v. New , 3 S.W.3d 515, 516 (Tex. 1999) ; see Tex. R. Evid. 802 ("Inadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay.").
But, even if the record did not contain direct evidence, as Father alleges, direct evidence is not necessarily required to support the predicate finding under section 161.001(E). "Circumstantial evidence may be sufficient to support termination." In re R.F. , 115 S.W.3d 804, 810 (Tex. App.-Dallas 2003, no pet.). Circumstantial evidence is "simply indirect evidence that creates an inference to establish a central fact. In re Lipsky , 460 S.W.3d 579, 588-89 (Tex. 2015). "All evidentiary standards, including clear and convincing evidence, recognize the relevance of circumstantial evidence." Id. at 589.
In addition to the direct evidence presented, Mother testified that the children told her that Father sexually abused them, and Mother described the alleged abuse.
*735 Although Father objected to this testimony as hearsay, Mother's counsel asserted the "outcry" exception in Family Code section 104.006. Section 104.006 provides that in a suit affecting the parent-child relationship, a statement made by a child twelve years of age or younger that describes alleged abuse against the child, without regard to whether the statement is otherwise inadmissible as hearsay, is admissible as evidence if the trial court finds that the statements are reliable and meet other criteria. See Tex. Fam. Code § 104.006.[2] The trial court ruled Mother's testimony admissible, and Father does not challenge this ruling on appeal. Mother also testified concerning the traumatic effects she believed the abuse had on the children, and her concerns about their future if Father's parental rights were not terminated. Additionally, she described contacting CPS about the abuse and testified that each of the children received forensic interviews which led to criminal charges being brought against Father.
Father next argues that the evidence is legally insufficient because Mother's original petition for divorce requested that parental rights be shared, and she made no allegation of sexual abuse until shortly before the first trial setting in August 2015. On cross-examination, Mother acknowledged that when she originally filed for divorce in January 2015, her petition requested that Father "have visitation one weekend per month due to his demanding and unpredictable work schedule," and she made no allegations of cruelty or sexual abuse. She also admitted that she did not make any allegations of sexual abuse until August 2015, when she filed her first amended petition for divorce. Mother explained, however, that when she filed her original petition, she filed a form document pro se, using the paperwork she could find because she was "trying to get a divorce and get as far away from [Father] as possible." Mother also testified that she initially believed Father's denials of any sexual abuse against T.H.W., and explained that she delayed making a report even after Father admitted sexually abusing the children because he told her no one would believe her, and she was afraid that her children could be taken from her. The trial court reasonably could have accepted Mother's explanations. See J.P.B. , 180 S.W.3d at 573.
Applying the appropriate standard of review, we conclude that the record contains legally sufficient evidence to support the trial court's finding that Father engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional *736 well-being of the children. See Tex. Fam. Code § 161.001(b)(1)(E). We overrule Father's first issue.
C. Factual Sufficiency of the Evidence to Support Termination of Father's Parental Rights under Section 161.001(E)
In his second issue, Father contends that the evidence is factually insufficient to support the trial court's findings that Father's parental rights should be terminated. Father points to his own testimony in which he denied ever abusing his children. Father also testified that his letters to the children were written, not for the children, but for Mother and their "spiritual advisor" as a "last ditch desperation act to be able to see and spend time with" his children. According to Father, Mother and the spiritual advisor threatened to go to the police, tell everyone at his workplace, have the children taken away, and put him in jail if he did not write the letters. Father also testified that since July 2014, the children have admitted to him on more than one occasion that Father did not abuse them. According to Father, Mother was present at times when these admissions were made.
To ensure that we appropriately respect the fact finder's function, we are required to give due deference to the trial court, who, "having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of the witnesses." A.B. , 437 S.W.3d at 503. Not only did the trial court have the opportunity to observe Father's testimony directly, but Father, by his own admission, was capable of being untruthful or manipulative when it served his purposes.
For example, Father wrote a letter to Mother detailing his multiple affairs, which was admitted into evidence. In the letter, Father repeatedly discussed how he would manipulate and lie to the women to get sex or other things he wanted from them. At trial, Father admitted that he manipulated the women for his own benefit. Further, on cross-examination, Father stated that he wrote the letters to the children so that he would be allowed to speak with them, explaining, "It was a fee for service. I do this; I get that." On this record, the trial court reasonably could have discredited Father's self-serving testimony.
Reviewing the evidence under the appropriate standard, we conclude the evidence is factually sufficient to support the trial court's finding under section 161.001(E). We overrule Father's second issue.
II. Issue Three: The Best Interest of the Children
In his third issue, Father contends that the evidence does not support a finding that termination of his parental rights is in the best interest of the children. Father points to his proposed parenting plan submitted into evidence, in which he proposed, among other things, joint managing conservatorship of the children, a standard possession order, and child support of $500.00 per month. Father also cites to his testimony that he would "do whatever it takes" to be able to parent and take care of his children. According to Father, the evidence at trial established that he provided emotional, physical, and financial support that was in the children's best interest. In contrast, Father maintains, Mother's entire case for termination was based on her unsupported allegations of sexual abuse against the children. In determining the best interest of the children, the court may consider the desires of the children, the current and future emotional and physical needs of the children, and the current and future emotional and *737 physical dangers the children may confront. Holley v. Adams , 544 S.W.2d 367, 371-72 (Tex. 1976). The court also may consider the parents' parental abilities, the stability of the home, the parents' plan for the children, acts or omissions by the parents, and any excuses for those acts or omissions. Id. ; see also Tex. Fam. Code § 263.307 (listing factors that should be considered by the court). The list is not exhaustive, and a court need not have evidence on every element listed to make a valid finding as to the child's best interest. C.H. , 89 S.W.3d at 27. While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. In re A.P. , 184 S.W.3d 410, 414 (Tex. App.-Dallas 2006, no pet.).
The evidence supporting the predicate grounds for termination also may be used to support a finding that the best interest of the child warrants termination of the parent-child relationship. C.H. , 89 S.W.3d at 28 ; In re N.R.T. , 338 S.W.3d 667, 677 (Tex. App.-Amarillo 2011, no pet.). Furthermore, in conducting the best interest analysis the court may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. In re E.D. , 419 S.W.3d 615, 620 (Tex. App.-San Antonio 2013, pet. denied). We already have concluded that the evidence is legally and factually sufficient to support the predicate grounds for termination. The evidence of sexual abuse of all four of the children and the impact of the abuse on the children, now and in the future, likewise supports the trial court's finding that termination of Father's parental rights is in the children's best interest. We overrule Father's third issue.
III. Issue Four: Admission of Carol Sepulveda's Testimony
In his fourth issue, Father contends that the entire testimony of the children's therapist, Carol Sepulveda, "is improper hearsay testimony as she is allegedly providing out of court statements of the children who did not testify nor were subjected to cross-examination." Father also complains that Sepulveda's testimony is improper opinion testimony. Father does not connect his objections to specific portions of Sepulveda's testimony; instead, he cites generally to lengthy excerpts from the testimony, which reflect that the trial court overruled some of Father's objections and sustained others.
A. Standard of Review
Evidentiary rulings are committed to the trial court's sound discretion. Bay Area Healthcare Grp., Ltd. v. McShane , 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). A trial court abuses its discretion only when it rules without regard for any guiding rules or principles, and we must uphold a trial court's evidentiary ruling if there is any legitimate basis to support it. Owens-Corning Fiberglas Corp. v. Malone , 972 S.W.2d 35, 43 (Tex. 1998). Even if a court erroneously admits improper evidence, the complaining party must show that the error probably resulted in an improper judgment, which typically requires a showing that the judgment turned on the particular evidence in question, to warrant reversal. See Tex. R. App. P. 44.1 ; Interstate Northborough P'ship v. State , 66 S.W.3d 213, 220 (Tex. 2001). In making this determination, we review the entire record. Interstate Northborough , 66 S.W.3d at 220.
B. Father's Hearsay Objections
We first turn to Father's complaint that the trial court abused its discretion by admitting hearsay testimony.
*738 Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted and is inadmissible unless a statute or rule of exception applies. Tex. R. Evid. 801(d) ; 802. The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule. Volkswagen of Am., Inc. v. Ramirez , 159 S.W.3d 897, 908 n.5 (Tex. 2004) (citing Skillern & Sons, Inc. v. Rosen , 359 S.W.2d 298, 301 (Tex. 1962) ).
After the trial court ruled that Sepulveda would be allowed to testify as a fact witness only, the following exchange occurred:
Q. [Mother's Counsel]: Hello, Ms. Cepeda [sic], could you please state your name [for the] record.
A. It's Carol Signs Sepulveda.
Q. And you are actually-how do you know the children of this suit?
A. I'm their therapist.
Q. Okay. So they come to you for regular counselling?
A. Yes.
Q. And what were the circumstances that brought them into your office?
A. They came because they had been sexually abused.
Q. Okay.
[Father's Counsel]: I'm going to object, your Honor, and ask that be stricken, one, as hearsay and this witness is not testifying as an expert witness and has no basis for making those statements.
THE COURT: Overruled.
* * *
Q. And during your conversations with the children, did they make any outcries of sexual abuse?
[[Father's Counsel]: Objection; hearsay.
[Mother's Counsel]: It's a hearsay objection, your Honor, with the kids with an outcry of sexual abuse.
THE COURT: Sustained; fact witness. Now, if you're asking her to testify about what occurred in her office not for the matter-the truth of the matter asserted, but just as to what occurred in her therapy, I will reconsider.
Q. [Mother's Counsel]: Were the kids in therapy with you and your offices due to sexual abuse by their father?
[Father's Counsel]: Objection; it's hearsay, your Honor, and also it's leading.
THE COURT: Sustained; leading.
Q. [Mother's Counsel]: All right. What were the kids coming to your office for therapy for?
A. They were coming into my office to be treated because of sexual abuse.
Q. Okay. During your sessions, did any of the kids make any outcries to you?
[Father's Counsel]: Objection; calls for hearsay, your Honor.
THE COURT: I didn't hear you.
[Father's Counsel]: Objection; calls for hearsay, your honor.
THE COURT: Overruled. The word "outcry" was used, so I will allow her to answer.
A. Can you ask the question again?
Q. [Mother's Counsel]: During the sessions that you had with the children, did any of the children make an outcry to you?
A. Yes.
Q. Okay. And which children were they-made an outcry to you?
A. All four of them.
Q. Okay. And in particular, let's just start with the first one, [R.H.W.]. What were-what outcry did he make to you?
*739 [Father's Counsel]: Objection, your Honor. This calls for hearsay.
THE COURT: Overruled. You can answer.
A. Okay. [R.H.W.] told me that starting at a very young age, maybe three, that his father sexually molested him and that this continued until dad left the house. And not only did the dad molest him, he had them molest each other in his presence.
Q. [Mother's Counsel]: Okay. Now, later on today you might get asked questions on whether or not [Mother] told the kids to say that or to create the outcry to you. Do you feel that [Mother]-
A. No.
Q. -you know, coerced the kids to say this?
[Father's Counsel]: Objection, your Honor. This is totally improper testimony. Specifically, this witness has not been deemed an expert to talk about the truth and the matter about another witness, your Honor. It's improper.
[Mother's Counsel]: Your Honor, even as a fact witness she can have her own opinions about whether a person coerced.
THE COURT: Overruled.
[Father's Counsel]: Your Honor, it's my intention to object to every single item that someone else says. If the Court would allow, I would like to have a running objection.
THE COURT: You may.
Q. [Mother's Counsel]: So do you feel that [Mother] coerced the kids?
A. No, I don't.
[Father's Counsel]: And that is a new objection, your Honor. The objection is that she's testifying-she cannot testify even as a fact witness about the truthfulness of some other witness.
THE COURT: Overruled.
Q. [Mother's Counsel]: What leads you to believe that she's not forcing the children?
A. I see the children individually and their story-each one's story has been consistent. And when they tell their story, they tell it with a lot of shame and emotion. I use a therapeutic modality called trauma focus cognitive behavioral therapy. And with that, we do what's called a trauma narrative. That means that each child tells me their story from the day they were born and then we also go into the worst day of their life. They have been very consistent, and they've been very emotional and their stories overlap.
Q. And why is it important that they are emotional when they are telling you these things?
A. Well, there's a lot of feeling that if some said, you know, go tell your therapist, sadness wouldn't be there. This is a lot of sadness and confusion and just deep, deep shame that the children are expressing.
Q. Okay, Now, if we were to ask about each one of the children, would their stories be substantially the same?
A. They would be similar.
Q. Okay.
Father complains that the Sepulveda's entire testimony is improper hearsay testimony because she is allegedly providing out of court statements of the children, who did not testify and were not subjected to cross-examination. In response to Father's hearsay objections, Mother's counsel asserted the Family Code "outcry" exception. See Tex. Fam. Code § 104.006.
Sepulveda testified that she had been conducting sessions with the children for a year, beginning in October or November of *740 2015. The record shows that in 2016, the children would have been between the ages of five and eleven. The record does not show that the children were unavailable to testify. Further, the case was tried to the court, and because the trial court admitted the statements, the trial court impliedly found that the requirements of section 104.006 were met. See In re K.L. , 91 S.W.3d 1, 17 (Tex. App.-Fort Worth 2002, no pet.) (holding that in a bench trial, the trial court is not required to make express findings or consider the admissibility of hearsay statements at any specific time during the proceedings); see also In re A.P. , No. 04-16-00259-CV, 2016 WL 5795169, at *4 (Tex. App.-San Antonio Oct. 5, 2016, no pet.) (mem. op.) (same). Specifically, the record supports an implied finding by the trial court that the children were under the age of twelve when the statements were made, the statements were reliable, and the children were available to testify. See Tex. Fam. Code § 104.006(1) ; K.L. , 91 S.W.3d at 17.
Father does not argue on appeal that Family Code section 104.006 does not apply as a hearsay exception. Even if the trial court erred by admitting the testimony, however, any error is harmless because Father did not object to the admission of the criminal complaints against him, which included descriptions of each child's forensic interviews describing specific instances of abuse by Father in greater detail than Sepulveda's testimony provided. When evidence identical or similar to the objected-to evidence is admitted elsewhere without objection, there is no harm. See Reliance Steel & Aluminum Co. v. Sevcik , 267 S.W.3d 867, 873 (Tex. 2008) (stating that the erroneous admission of evidence is likely harmless if it is cumulative); In re I.C. , No. 02-15-00300-CV, 2016 WL 1394539, at *11 (Tex. App.-Fort Worth Apr. 28 2016, no pet.) (mem. op.) (per curiam) (holding any error in trial court's failure to hold a hearing under section 104.006 concerning therapist's testimony about children's statements to her about father's physical abuse was harmless when evidence included unobjected-to exhibit containing the same or similar information). We therefore overrule Father's fourth issue.
C. Father's Expert-Opinion Objections
Father also complains that the trial court abused its discretion in allowing Sepulveda to give opinion testimony, pointing to the following excerpt from his cross-examination of Sepulveda:
Q. [Father's Counsel:] Now, you're here and you are suggesting to the Court that you know whether or not the children tell you the truth? Is that what you're testifying to?
A. I'm testifying about what the children have told me.
Q. Do you understand-did you understand my question?
A. I do. You're asking me are they telling the truth.
Q. No, I'm asking you is that what your testimony is? You're suggesting that you know whether or not a child is telling the truth when they are talking about issues of sexual abuse?
[Mother's Counsel]: Your Honor, I'm going to object. He's putting words in her mouth. She never said that she knew. It was her opinion that they were telling the truth.
THE COURT: What was your objection again?
[Mother's Counsel]: My objection is he's misrepresenting her prior testimony.
THE COURT: Sustained. Why don't you rephrase.
*741 Q. [Father's Counsel:] Are you here today testifying that you know whether or not the children are telling the truth to you when they're talking to you about issues of sexual abuse?
A. I'm assuming that they're telling me the truth because it's not-
Q. Let me stop.
A. -I have not met them.
Q. You say you're making an assumption?
A. Yes.
[Father's Counsel]: Your Honor, then I would ask that this witness' testimony be stricken. It's totally improper. She's testifying now that she's made an assumption. There is no clinical or evidence basis for her to make these assumptions.
[Mother's Counsel]: My argument is, your Honor, she's a fact witness. She gave her opinion and not medical diagnosis.
[Father's Counsel]: In particular, your Honor, if I may respond briefly, your Honor, particularly under 702, 3, 4, and 5, it's totally improper for this witness as a fact witness or a lay witness to give an opinion, an expert opinion on a subject matter.
THE COURT: Sustained with regard to her opinion. Any testimony relating to any facts is-will stand....
As noted above, the trial court sustained Father's objections to Sepulveda providing expert opinion testimony. In reviewing a case tried before the court instead of a jury, we generally presume that the trial court disregarded any incompetent evidence. Gillespie v. Gillespie , 644 S.W.2d 449, 450 (Tex. 1982). The admission of such evidence will generally not require reversal of the judgment when there is competent evidence to authorize its rendition. Id. Father does not articulate any other argument explaining why this portion of Sepulveda's testimony, or any other portion of her testimony, is inadmissible. We overrule Father's fourth issue concerning Sepulveda's opinion testimony.
IV. Issue Five: Exclusion of Evidence after Mother "Opened the Door"
In his fifth issue, Father contends that the trial court abused its discretion by excluding Dr. Stephen Thorne's curriculum vitae and psychological evaluation of Father on the basis of hearsay when Mother "opened the door to this testimony." Father did not present Dr. Thorne as an expert witness to testify concerning Father's psychological evaluation. Instead, Father sought admission of Dr. Thorne's documents to prove the truth of the matter asserted-namely, Dr. Thorne's expert opinion concerning Father's psychological evaluation. Therefore, as Father recognizes, the documents must satisfy a recognized exception to the hearsay rule to be admissible.
On cross-examination, Mother's counsel asked Father if he had ever had a mental health evaluation, and he answered affirmatively. Father further testified that the evaluation "came out very well" and that he had no psychological pathologies or tendencies. On redirect, in response to Father's counsel's questions, Father testified that he had a psychological evaluation done by Dr. Stephen Thorne. Father then sought to admit Dr. Thorne's curriculum vitae and the psychological evaluation, but Mother's counsel objected on the grounds that the documents had not been provided through discovery or admitted into evidence. Father's counsel sought to offer the documents into evidence, but the amicus attorney, joined by Mother, lodged a hearsay objection. The trial court sustained the objection and refused to admit the documents.
*742 Father did not immediately argue that opposing counsel had "opened the door" to this evidence, but he stated that he also intended to make an offer of proof. At the end of the trial, Father argued that it had not been his intention to introduce Dr. Thorne's documents, but the questions from Mother and the amicus attorney "opened the door to this testimony" when they asked Father about any psychological assessments he had. The trial court found the documents were hearsay and denied Father's request that they be admitted.
On appeal, other than citing generally to the abuse-of-discretion standard, Father's entire argument consists of the following: "As this testimony was in response to [Mother's] questioning the testimony meets an exception to the hearsay rule and was thus proper." Father cites no rule or case law supporting his conclusory argument.
It is not our duty to review the record, research the law, and then fashion a legal argument for an appellant when he has failed to do so. Canton-Carter v. Baylor Coll. of Med. , 271 S.W.3d 928, 931-32 (Tex. App.-Houston [14th Dist.] 2008, no pet.). Briefing waiver occurs when a party fails to make proper citations to authority or to the record or provide any substantive legal analysis. Tex. R. App. P. 38.1(i) ; Canton-Carter , 271 S.W.3d at 931. Even though we are required to interpret appellate briefs reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of their argument. San Saba Energy, L.P. v. Crawford , 171 S.W.3d 323, 338 (Tex. App.-Houston [14th Dist.] 2005, no pet.). Accordingly, we conclude that Father failed to adequately brief any argument in support of this issue, and so has waived the complaint.
Even absent briefing waiver, Father could not prevail on this issue because the record shows that Mother's counsel was merely inquiring into whether Father had ever had any kind of mental health evaluation, and Father provided unchallenged testimony that he had a very positive evaluation. No additional information was required to correct incomplete or otherwise misleading evidence to fully explain Father's testimony. Additionally, Father has not demonstrated how the excluded evidence probably resulted in an improper judgment. See Tex. R. App. P. 44.1 ; Interstate Northborough , 66 S.W.3d at 220. Were we to reach the merits of this issue, we would conclude that Father has not shown that the trial court abused its discretion in excluding Dr. Thorne's documents.
V. Issue Six: Amicus Attorney's Fees Awarded as Child Support
In his sixth issue, Father contends that the trial court impermissibly ordered child support after terminating his parental rights by ordering that the attorney's fees payable to the amicus attorney were awarded as additional child support. Father requests that the trial court's finding that the fees be payable as child support be reversed.
As noted above, Mother and Father stipulated on the record that each would pay one-half of the attorney's fees incurred by the amicus attorney. In the final decree of divorce, the trial court awarded the fees consistent with the parties' stipulation, and also found that the fees "are necessaries for the benefit of the children and are awarded as additional child support." The trial court further ordered that if either party failed to pay the amicus attorney's fees after thirty days, the amicus attorney could enforce a wage withholding order *743 signed by the court "to collect the fees as additional child support."
"The distinction between a judgment for attorney's fees characterized as a debt and an award of attorney's fees characterized as additional child support is significant." Tucker v. Thomas , 419 S.W.3d 292, 297 (Tex. 2013). The Texas Constitution prohibits a trial court from confining a person under its contempt powers to enforce a judgment for debt. Id. (citing Tex. Const. art. I, § 18 ). In contrast, an obligation to pay child support and attorney's fees related to a child support enforcement proceeding is viewed as a legal duty and not a debt; as such, a trial court may use its contempt power to ensure that child support obligors pay overdue child support. See id. ; In re Henry , 154 S.W.3d 594, 596 (Tex. 2005) (orig. proceeding) (per curiam) ("[A] person may be confined under a court's contempt powers for failure to pay child support.").
With one exception not applicable here, an order terminating parental rights "divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides." See Tex. Fam. Code § 161.206(b). Therefore, Father argues, when the parent-child relationship is terminated, the duty to provide support for the children ends, making the trial court's award of amicus attorney's fees as child support improper.
We review the trial court's award of attorney's fees in a suit affecting the parent-child relationship for abuse of discretion. See Bruni v. Bruni , 924 S.W.2d 366, 368 (Tex. 1996). A court's authority to assess attorney's fees as additional support or as necessaries cannot be inferred, but must be specifically authorized by statute. Tucker , 419 S.W.3d at 297. Statutory construction is an issue of law reviewed de novo. Id. at 295. Our primary objective when construing statutes is to give effect to the Legislature's intent, and we ascertain this intent by looking to the entire act. Id.
The Family Code authorizes a trial court to make a discretionary appointment of an amicus attorney in a private suit affecting the parent-child relationship when the best interest of the children is an issue. See Tex. Fam. Code § 107.021 ; In re Scheller , 325 S.W.3d 640, 645 (Tex. 2010) (orig. proceeding) (per curiam). When termination of the parent-child relationship is requested in such a suit, the trial court "shall" appoint an amicus attorney (or attorney ad litem) unless the court finds that the interests of the child will be represented adequately by a party to the suit whose interests are not in conflict with the child's interests. Tex. Fam. Code § 107.021(a-1). Section 107.023 authorizes awards of reasonable fees and expenses to appointed amicus attorneys. Id. § 107.023(a). Relevant here, the statute specifically provides that "[t]he court may determine that fees awarded under this subchapter to an amicus attorney ... are necessaries for the benefit of the child." Id. § 107.023(d). Thus, under section 107.023(d), a trial court has the discretion to characterize amicus attorney's fees as necessaries. Tucker , 419 S.W.3d at 297.
At common law, the doctrine of necessaries implied a contract between a parent and the provider of necessaries furnished to the parent's child by a third person. Tucker , 419 S.W.3d at 298-99. A parent's common law liability for necessaries is currently codified in Family Code section 151.001(c), which provides that "[a] parent who fails to discharge the duty of support is liable to a person who provides necessaries to those to whom support is owed." Id. at 299 (citing *744 Tex. Fam. Code § 151.001(c) ). Father does not cite, discuss, or attempt to distinguish Family Code sections 107.023 or 151.001(c).
Because section 107.023(d) specifically authorizes the trial court to award amicus attorney's fees as necessaries for the benefit of the children, the trial court did not abuse its discretion in awarding the fees as necessaries. See Tex. Fam. Code § 107.023(d) ; Tucker , 419 S.W.3d at 300 (noting that section 107.023 specifically authorizes trial courts to characterize fees awarded to an amicus attorney as necessaries for the benefit of the child). However, the trial court also characterized the fees as "additional child support," which is not expressly authorized by the statute. See Tucker , 419 S.W.3d at 296 (stating that in the absence of express statutory authority, a trial court does not have discretion to characterize attorney's fees as necessaries or as additional child support). Attorney's fees may be awarded as child support solely under Family Code section 157.067, which is limited to child support enforcement proceedings. See id. at 298. Additionally, a wage withholding order to satisfy an award of attorney's fees and costs in a suit affecting the parent-child relationship is an exercise of the court's contempt power derived from Chapter 157 and is authorized only in child support enforcement actions. See id. at 297 ; Tex. Fam. Code § 158.0051(1) ("[T]he court may render an order that income be withheld from the disposable earnings of the obligor to be applied towards the satisfaction of any ordered attorney's fees and costs resulting from an action to enforce child support under this title.").
Although the Legislature could have provided that a trial court may award attorney's fees under section 107.023 as additional child support rather than as necessaries, it did not do so. Nor did the Legislature authorize an order awarding attorney's fees as necessaries to be enforced as child support similar to the express language it used to authorize enforcement of attorney's fees and costs in addition to arrearages in child support enforcement actions "by any means available for the enforcement of child support, including contempt." See Tex. Fam. Code § 157.167(a). And, nothing in the Family Code's comprehensive scheme concerning awards of attorney's fees in suits affecting the parent-child relationship equates "necessaries" with child support. Absent an express provision authorizing an award of amicus attorney's fees to be characterized and enforced as additional child support, we conclude that the trial court erred by awarding the amicus attorney's fees in this case as additional child support and providing for enforcement of its order by a wage withholding order. See Tucker , 419 S.W.3d at 298.[3]
To conform the trial court's judgment to the governing statute, we modify the decree to delete the language indicating the amicus attorney's fees awarded to Bobbie Young are awarded "as additional child support" and the provisions authorizing Bobbie Young to enforce the wage withholding order against Father if the amicus attorney's fees are not timely paid. Father does not otherwise challenge the award of attorney's fees to Bobbie Young. See Tex. R. App. P. 43.2(b).
CONCLUSION
We overrule Father's issues one through five. We sustain Father's sixth issue and modify the trial court's judgment to delete the language indicating that the amicus attorney's fees awarded to Bobbie Young *745 are awarded as "additional child support" and to delete the provisions authorizing Bobbie You to enforce the wage withholding order against Father. We affirm the judgment as modified.

Although Father notes that the trial court proceeded to trial after denying Father's motion to stay the civil proceedings pending conclusion of the criminal proceedings, motion for severance, and motion for continuance, Father does not appeal these rulings.

Texas Family Code section 106.004 provides:
In a suit affecting the parent-child relationship, a statement made by a child 12 years of age or younger that describes alleged abuse against the child, without regard to whether the statement is otherwise inadmissible as hearsay, is admissible as evidence if, in a hearing conducted outside the presence of the jury, the court finds that the time, content, and circumstances of the statement provide sufficient indications of the statement's reliability and:
(1) the child testifies or is available to testify at the proceeding in court or in any other manner provided for by law; or
(2) the court determines that the use of the statement in lieu of the child's testimony is necessary to protect the welfare of the child.
Tex. Fam. Code § 106.004. The Family Code outcry exception differs from the hearsay exception for child outcry witness testimony found in Texas Code of Criminal Procedure article 38.072. Among other things, article 38.072 requires the child's out-of-court statements to have been made to the first person, other than the defendant, who was 18 years of age or older. See Tex. Code Crim. Proc. art. 38.072, § 2(a)(3).

At oral argument, Mother's attorney conceded that the trial court erred by awarding the amicus attorney's fees as additional child support.