

# NUMBER 13-25-00657-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF B.G.A.Y., A CHILD

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 5
## OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Fonseca**

In this appeal, appellant S.A. challenges the trial court's order terminating her parental rights to her biological daughter B.G.A.Y.[1] By a single issue, S.A. contends that termination was not in the child's best interests. We affirm.

### I.     BACKGROUND

B.G.A.Y. was born to biological parents S.A. and J.F.Y. on December 28, 2023.

---

[1] We refer to the child and her biological parents by initials in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

The Texas Department of Family and Protective Services (the Department) filed a petition for conservatorship and termination of both parents' parental rights on December 20, 2024. The petition was accompanied by an "Affidavit in Support of Removal" in which Department caseworker Maria Arispe averred, among other things, that S.A. "admitted to using hydrocodone prior to delivering" B.G.A.Y. and that the child "was delivered prematurely" and tested "positive for opioids and methadone" at birth. Arispe also stated that both parents took court-ordered hair follicle and urinalysis drug tests which were positive for heroin and cocaine; that they "continue to test positive on recent oral drug swabs for Heroin"; that they "missed a session with the Mental Health/Parenting counselor on December 13, 2024"; and that they "are not consistent with their services."

At trial in October of 2025, S.A. did not appear personally but was represented by counsel. Carlos Cadena testified that he was the "primary conservatorship caseworker" assigned to the case. Because B.G.A.Y. "tested positive for opiates at birth," her parents were offered Family-Based Safety Services. However, they were not "successful" in those services, so the Department sought and obtained emergency removal and conservatorship.

Cadena said that, at the initial adversary hearing on January 6, 2025, both parents admitted to having used heroin the previous day. He said that he presented them with a Family Plan of Service, but S.A. did not sign the plan. J.F.Y. attended inpatient drug treatment for five days, then left. S.A. did not attend inpatient drug treatment.

Cadena said that his communication with S.A. has "been very sporadic" throughout the case. He said he attempted to communicate with S.A. "[a]t least once a month" via text and phone and "[t]here w[ere], at least, two times in the case that she had personally

2

tried to call me," but "[f]or the most part, she largely didn't respond to me." He stated that both parents knew how to contact him, and he did not change his office location or phone number during the case. Cadena further testified that, since the Department was named the child's conservator in January 2025, S.A. had not attempted to visit B.G.A.Y. or taken a drug test.[2] He explained the Department was seeking termination due to both parents' "continued usage of substances," "concerns related to mental health," and the fact that "the Department hasn't been able to fully assess their residences."

According to Cadena, B.G.A.Y. has been living at a foster residence in Corpus Christi since her removal in December 2024. When asked how she is doing in that placement, he replied:

> She's been doing pretty well. She has actually referred to the caregivers, husband and wife, as her mama and dada. She's bonded with some of the other children that are at the residence pretty well. She's capable of walking and has been able to start saying words now. She's able to do things such as wiping her mouth with a napkin. Being able to drink from a sippy cup. She's been growing pretty well. I can say that in the short amount of time she's been here.

He acknowledged that "during her time in care with the Department, [B.G.A.Y.] has had several illnesses or minor medical issues come up," but he said the Department and the foster parents have ensured that the child received proper medical treatment. Cadena stated that the foster parents are "already licensed to adopt through the Department" and are willing to adopt B.G.A.Y.[3] He opined that termination of both parents' rights would be in the child's best interest.

---

[2] Cadena clarified that "[t]here was at least one visit when it was part of the Family[-]Based Safety Services, but none with the conservatorship."

[3] B.G.A.Y.'s foster mother testified that there are four other children in her household. She said that B.G.A.Y. is "very affection[ate] with everybody" and has "a very, very strong bond" with her thirteen-year-old daughter in particular. She said that she is willing to provide a home for B.G.A.Y. whether or not her parents' rights are terminated.

The trial court granted the Department's petition to terminate S.A.'s parental rights. In its written order signed on October 30, 2025, the trial court found predicate grounds for termination under parts (D), (E), (N), and (O) of Texas Family Code section 161.001(b)(1). *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (N), (O).[4] It further found that termination was in the child's best interest. *See id.* § 161.001(b)(2).[5] This appeal followed.

## II.    DISCUSSION

### A.    Standard of Review and Applicable Law

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—

---

[4] The relevant parts of the statute authorize termination if a parent:

(D)    knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E)    engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . . .

(N)    constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than six months, and:

(i)    the [D]epartment has made reasonable efforts to return the child to the parent;

(ii)    the parent has not regularly visited or maintained significant contact with the child; and

(iii)    the parent has demonstrated an inability to provide the child with a safe environment; [and]

(O)    used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:

(i)    failed to complete a court-ordered substance abuse treatment program; or

(ii)    after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance.

TEX. FAM. CODE § 161.001(b)(1)(D), (E), (N), (O).

[5] The trial court also terminated J.F.Y.'s parental rights. J.F.Y. is not a party to this appeal.

Corpus Christi–Edinburg 2010, no pet.); *see In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring) ("Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases."). Accordingly, termination proceedings must be strictly scrutinized. *In re K.M.L.*, 443 S.W.3d at 112.

A trial court may order termination of the parent-child relationship only if it finds by clear and convincing evidence that: (1) the parent committed an act or omission described in Texas Family Code section 161.001(b)(1); and (2) termination is in the best interest of the child.[6] TEX. FAM. CODE § 161.001(b)(1), (2). The "clear and convincing" standard falls between the preponderance of the evidence standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re L.J.N.*, 329 S.W.3d at 671. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

Evidence is legally sufficient to support termination if a reasonable factfinder could form a firm belief or conviction that the finding was true. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). In conducting a legal sufficiency review, we assume that the fact-finder resolved disputed facts in favor of its finding if it was reasonable to do so, and we disregard all evidence that a reasonable fact-finder could have disbelieved or found to be incredible. *In re L.J.N.*, 329 S.W.3d at 671. We must also consider undisputed evidence, if any, that does not support the finding. *In re K.M.L.*, 443 S.W.3d at 113; *see In re J.F.C.*,

---

[6] S.A. does not dispute that the evidence was sufficient to support the trial court's findings under section 161.001(b)(1).

96 S.W.3d 256, 266 (Tex. 2002) ("Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.").

Evidence is factually insufficient to support termination if, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" that the finding was true. *In re A.C.*, 560 S.W.3d at 631; *In re J.F.C.*, 96 S.W.3d at 266. Under the factual sufficiency standard, we defer to the trier of fact's determinations on the credibility of the witnesses "so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *see In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

## B.    Analysis

There is a strong, though rebuttable, presumption that keeping a child with a parent is in the child's best interest. TEX. FAM. CODE § 153.131; *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Factors that courts consider in determining whether termination is in a child's best interest include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The party seeking termination is not required to prove all of these factors; in some cases, undisputed

6

evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re M.R.*, No. 13-25-00271-CV, 2025 WL 2726536, at *5 (Tex. App.—Corpus Christi–Edinburg Sep. 25, 2025, no pet.) (mem. op.).

In her brief, S.A. comprehensively recites the applicable law and standard of review, including the *Holley* factors and the factors required to be considered "in determining whether the child's parents are willing and able to provide the child with a safe environment." *See* TEX. FAM. CODE § 263.307(b).[7] S.A.'s entire argument applying

---

[7] Those factors are:

(1)    the child's age and physical and mental vulnerabilities;

(2)    the frequency and nature of out-of-home placements;

(3)    the magnitude, frequency, and circumstances of the harm to the child;

(4)    whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5)    whether the child is fearful of living in or returning to the child's home;

(6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7)    whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8)    whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9)    whether the perpetrator of the harm to the child is identified;

(10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12)    whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

    (A)    minimally adequate health and nutritional care;

    (B)    care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

    (C)    guidance and supervision consistent with the child's safety;

the law to the facts is as follows:

> Considering the *Holley* and Family Code factors, termination of [S.A.]'s parental rights is not in the best interest of the child. [Cadena], the primary conservatorship caseworker, testified that although sporadic, there were two times during the pendency of the case in which [S.A.] tried to contact the Department, and she had at least one visit with her child. The child, [B.G.A.Y.], had been residing in a foster home with three or four other children since the time of removal in December of 2024, and had only been doing "pretty well." [B.G.A.Y.] had several illnesses or minor medical issues since being placed in the foster-to-adopt three bedroom home. The Department failed to show the child was thriving in her new environment.

We cannot agree with S.A.'s characterization of the record. Even if B.G.A.Y. was not born with opioids and methadone in her system, the fact that she had "several illnesses or minor medical issues" in her first year of life would not be surprising, nor would it reflect negatively on the abilities of the foster parents or the suitability of their home as a placement. Instead, considering the disadvantage at which her biological parents placed her, the undisputed evidence that B.G.A.Y. was doing "pretty well" in her foster placement unequivocally supports the trial court's best interest finding.

In any event, the evidence at trial supporting termination largely centered around S.A.'s drug use, which she does not address in her brief. It is well-established that, in evaluating a child's best interest, a factfinder can give "great weight" to the "significant factor" of drug-related conduct by a parent. *See*, *e.g.*, *In re G.L.*, No. 13-20-00187-CV, 2020 WL 4812632, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 13, 2020, pet.

---

(D)     a safe physical home environment;

(E)     protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F)     an understanding of the child's needs and capabilities; and

(13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE § 263.307(b).

denied) (mem. op.); *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.); *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.); *see also Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (reasoning that a parent's illegal drug use may support termination because "it exposes the child to the possibility that the parent may be impaired or imprisoned").

Here, in addition to the evidence that B.G.A.Y. tested positive for drugs at birth, Cadena testified that S.A. admitted to using heroin the day before the initial adversary hearing, that she did not attend inpatient drug treatment, and that she did not undergo any drug testing during the conservatorship phase of the case. *See In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) ("The jury could reasonably infer that appellant's failure to complete the scheduled screenings indicated she was avoiding testing because she was using drugs."). Notably, S.A. does not dispute that the evidence was sufficient to support the trial court's findings as to the predicate grounds for termination, including its finding under Texas Family Code section 161.001(b)(1)(O) that she "used a controlled substance . . . in a manner that endangered the health or safety of the child, and . . . failed to complete a court-ordered substance abuse treatment program." *See* TEX. FAM. CODE § 161.001(b)(1)(O). The trial court could have inferred from all of this evidence that S.A. presents a risk of emotional and physical danger to the child, both now and in the future. *See Holley*, 544 S.W.2d at 372; *In re B.M.S.*, 581 S.W.3d 911, 917 (Tex. App.—El Paso 2019, no pet.); *In re R.H.W. III*, 542 S.W.3d 724, 737 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("The evidence supporting the predicate grounds for termination

9

also may be used to support a finding that the best interest of the child warrants termination of the parent-child relationship.").

A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *In re G.A.C.*, 499 S.W.3d 138, 141 (Tex. App.—Amarillo 2016, pet. denied); *In re K.C.*, 219 S.W.3d at 931; *see In re R.S.-T.*, 522 S.W.3d 92, 113 (Tex. App.—San Antonio 2017, no pet.). A factfinder may consider the consequences of failure to terminate parental rights and may also consider that the child's best interest may be served by termination so that adoption may occur, rather than the impermanent foster-care arrangement that would result in the absence of termination. *See In re K.C.*, 219 S.W.3d at 931. Accordingly, the undisputed evidence that B.G.A.Y. is "doing pretty well" with her foster parents, and that the foster parents are willing and able to adopt her, supports the best interest finding in this case. *See id.*

Considering all the *Holley* factors, we conclude that the evidence was legally and factually sufficient to rebut the presumption that keeping the child with her biological mother is in her best interest. *See In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005); *In re C.H.*, 89 S.W.3d at 25; *In re J.F.C.*, 96 S.W.3d at 266. We overrule S.A.'s issue on appeal.

### III.    CONCLUSION

The trial court's judgment is affirmed.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
9th day of April, 2026.