**Opinion issued October 21, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00233-CV

———————————

## IN THE INTEREST OF L.L.-M.C. AKA L.C., A CHILD

---

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-00757J**

---

## MEMORANDUM OPINION

In this appeal, the father challenges the trial court's final decree terminating his parental rights to his minor child, Leah, based on findings that he endangered her and that he failed to comply with provisions of a court order specifying the actions

necessary to obtain her return.[1] TEX. FAM. CODE § 161.001(b)(1)(D), (E), (O). He challenges the sufficiency of the evidence to support the predicate acts findings. We affirm.

## Background

This case concerns Leah, born in 2019, who came into the care of the Department of Family & Protective Services (the "Department") shortly after her first birthday. The Department became involved when it received a report alleging neglectful supervision of Leah by her mother and father.[2] Police officers and a canine unit went to the family's house where they found heroin in a diaper box along with needles and broken methamphetamine pipes. The mother opened the door when the authorities arrived, and the father came to the door carrying Leah. He was arrested on a felony warrant for possession of drugs. The mother tested positive for methamphetamines and was later arrested for drug possession and distribution. Leah was removed from her parents' home and placed with her paternal great aunt. After

---

[1] The trial court terminated the parental rights of both the mother and the father. This appeal concerns only the father. We use the fictitious name "Leah" to refer to the minor child, L.C., who is the subject of this appeal. *See* TEX. R. APP. P. 9.8(a).

[2] These details appear in the "additional information" section of the family services plan. At trial, both parents' attorneys objected to this portion of the family services plan based on hearsay. The Department responded that the narrative was admissible to explain the reasons the Department filed the case against both parents. The trial court responded that the details would not be considered for the truth of the matter asserted. The trial court overruled the parents' further objections that the details were more prejudicial than probative. They are listed here to explain the reasons that the Department began investigating the parents.

2

about two months, Leah was removed from her aunt's home and placed in a foster home.

The Department was appointed temporary managing conservator of Leah on April 8, 2020. The court entered an order requiring both parents to comply with the requirements of the Department's family services plan. The family services plan was filed the next month. The mother's plan was approved by the court in May 2020. After a hearing attended by the father and his counsel, the trial court specifically approved the plan for the father on June 18, 2020.

The case proceeded to trial on March 31, 2021. The caseworker testified that Leah was in a foster home, and the Department's goal was adoption by a relative or someone unrelated to her. The caseworker testified that Leah was brought into care due to neglectful supervision, specifically that the household had "drugs in it from the mother and the father and they were active drug users and they were using drugs around the child." The caseworker testified that the father had been ordered to complete parenting classes, maintain stable housing and income, cooperate with the Department, and attend hearings, conferences, and visits. He had also been ordered to participate in a substance abuse assessment, to submit to random drug screening, and to participate in a psychosocial assessment and follow all recommendations from it. According to the caseworker, the father did not complete any services except

3

for participating in court hearings. He did not take any drug tests. He did not have any visits with Leah because he had not submitted to a drug test.

The caseworker testified that each parent had previous cases where their rights to other children had been terminated. The cases did not involve Leah. The caseworker specified that with respect to the father, his previous termination case involved termination according to subsections (D), (E), and (O).[3]

The caseworker believed that termination was in the best interest of Leah because the parents had not engaged in services required by the family services plan. Leah was initially placed with a paternal aunt for about three months. Then she was removed from the aunt's care and placed with a foster family. Leah was doing well in her foster care placement.

On cross examination, the caseworker stated that she had written the father letters while he was in jail in Harris County. He never responded, and the caseworker did not receive proof that the father received the certified mail. She also testified that before the father went to jail, she referred him for services in accordance with his family services plan. The father was scheduled for a substance abuse assessment, but he did not go to the appointment. The caseworker confirmed that the father submitted to a paternity test and attended some court hearings. He told the Department that he had stable income from unemployment benefits and that he had

---

[3] *See* TEX. FAM. CODE § 161.001.

stable housing, but he did not provide proof of either. He had not completed any other tasks from the plan.

The Department's investigator testified that the case began due to a report of neglectful supervision, that there were drugs in the home, and that the mother was manufacturing and selling methamphetamines. During the investigation, the mother tested positive for methamphetamines. She was arrested due to her drug use. The investigator spoke with the father by phone. He attempted to interview the father in person while he was in jail, but the father refused to talk to the investigator. The investigator clarified that both parents were incarcerated at some point during the investigation, and the mother was released. The investigation revealed that both parents had criminal records, and their criminal histories were listed in the family services plan.

The Court Appointed Special Advocate ("CASA") testified that she had been assigned to the case since April 2020. Since that time, she had FaceTime visits with Leah twice a month. She testified that she had never spoken to the father because he never returned her phone calls. He had sent her text messages.

The CASA testified that Leah was placed with a foster family that consisted of a mother, father, and two sons. She had observed Leah several times over the months on Facetime. Leah played with the other children and interacted happily with the foster parents. The CASA had no concerns about Leah's placement with the

foster family. The CASA explained her concerns about two family members as possible placements for Leah.

The foster mother testified that Leah was doing well in her care. Leah had bonded with the foster parents' biological children and enjoyed playing with them. The foster mother expressed a desire to be Leah's long-term caregiver and adopt her if possible.

The trial court entered a final judgment terminating the parents' rights based on endangerment, *see* TEX. FAM. CODE § 161.001(b)(1)(D), (E), and based on failure to "comply with the provisions of a court order that specifically established the actions necessary . . . to obtain return of [the child]." *See id.* § 161.001(b)(1)(O). The court also found that termination was in Leah's best interest and appointed the Department as sole managing conservator of Leah.

## Sufficiency of the Evidence

The father challenges the legal and factual sufficiency of the evidence to support termination under subsections (D), (E), and (O). *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (O).

### A.    Standard of Review

A court may order termination of the parent-child relationship when it finds by clear and convincing evidence that the parent has committed one or more of the statutorily enumerated predicate acts or omissions, and that termination is in the

children's best interests. TEX. FAM. CODE § 161.001(b)(1), (2). "Only one predicate finding" under section 161.001(b)(1) "is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *see In re A.H.L.*, No. 01-16-00784-CV, 2017 WL 1149222, at *3 (Tex. App.—Houston [1st Dist.] Mar. 28, 2017, pet. denied) (mem. op.).

The interest of parents in the care, custody, and control of their children is a fundamental liberty interest protected by the Constitution. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982). But the rights of natural parents are not absolute. *A.V.*, 113 S.W.3d at 361. Protection of the child is paramount, and when the State institutes proceedings to terminate parental rights, the courts focus on protecting the best interests of the child. *See id.*

"A strong presumption exists that a child's best interests are served by maintaining the parent-child relationship." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 618 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We strictly scrutinize termination proceedings on appeal because "the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (citing *Santosky*, 455 U.S. at 747–48); *see In re J.F.C.*, 96 S.W.3d 256, 263–

64 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

In conducting a legal sufficiency review, we view "the evidence in the light most favorable to the finding," which means that we "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. A reviewing court may not disregard undisputed facts that do not support the finding, but it "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* Evidence is legally sufficient when it enables a factfinder to "reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof." *Id.*; *see* TEX. FAM. CODE § 101.007.

In a factual sufficiency review, the reviewing court again determines "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *J.F.C.*, 96 S.W.3d at 266. But rather than disregarding disputed evidence that the factfinder could have disbelieved, we consider whether "a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or

8

conviction, then the evidence is factually insufficient." *Id.*; *see In re A.R.R.*, No. 01-18-00043-CV, 2018 WL 3233334, at *3–4 (Tex. App.—Houston [1st Dist.] July 3, 2018, pet. denied) (mem. op.). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006).

## B.    Analysis

### 1.    Predicate Finding—Subsection 161.001(b)(1)(O)

There was legally and factually sufficient evidence to support the trial court's finding that the father failed to "comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of [the child]." *See* TEX. FAM. CODE § 161.001(b)(1)(O). An individual's parental rights may be terminated under subsection (O) if (1) the Department has been the child's temporary managing conservator for at least nine months, (2) the Department took custody of the child as a result of an emergency removal for child abuse or neglect, (3) a court issued an order establishing the actions necessary for the parent to obtain the return of the child, and (4) the parent did not comply with the court order. *Id.*; *In re S.M.R.*, 434 S.W.3d 576, 582 (Tex. 2014).

The family services plan required the father to complete specific tasks, including maintaining stable and safe housing and employment and providing proof to the Department; participating in a psychosocial evaluation and following all

9

recommendations; participating in a substance-abuse assessment and following all recommendations including random drug testing; participating in a parenting class in-person; contacting the Department monthly; attending court hearings and permanency hearings; and attending visits with Leah.

The caseworker testified that while the father submitted to a paternity test and attended some court hearings, he did not complete most of the tasks in the court-ordered service plan. She testified that the father mentioned that he had stable housing and income through unemployment benefits, but he did not provide proof to the Department. Before the father became incarcerated, the caseworker arranged for a substance abuse assessment, and the father did not show up for the appointment.

The caseworker testified that she had contacted the father by certified mail while he was in the Harris County jail. The caseworker never received proof that he had received the letters. The Department's investigator testified that he had spoken with the father by phone and attempted to speak with him in jail. The father refused to speak to the investigator when the investigator visited the jail.

On appeal, the father argues that there is insufficient evidence to prove that he received and was aware of the family services plan. The record does not support his contentions. The father was served with a citation and copy of the Department's suit on March 16, 2020. He answered, requesting affirmative relief, in June 2020. On the same day, he appeared with his attorney at a special status hearing with regard to his

family service plan. The trial court's order notes his presence and states that the father "**has not** reviewed and **does** understand the service plan." (emphasis in original). The order states that father "will be meeting with the [D]epartment on June 11, 2020 to review the family plan of service."

The father argues that there is no evidence that the meeting about the service plan took place. He suggests that because the caseworker did not testify regarding whether the father received the family service plan or whether someone from the Department went over the plan with him, the evidence is insufficient to support the predicate act. The father did not, however, put on any evidence to support the assertion that the meeting did not take place. He did not testify, and he appeared at trial only through his attorney. The record supports a finding that the father knew about the family services plan and understood the consequences of failing to complete its requirements. The record also supports a finding that the father did not complete the tasks required by the plan.

To the extent the father argues the statutory defense to termination under subsection (O), the evidence does not preponderate in favor of the application of the statutory defense. The Texas Family Code establishes a single affirmative defense to termination for failure to comply with a court order. A court may not order termination based on subsection (O) if a parent proves by a preponderance of the evidence that the parent was unable to comply with specific provisions of the court

11

order and the parent made a good faith effort to comply and the failure to comply is not attributable to any fault of the parent. TEX. FAM. CODE § 161.001(d).

The father has not established the applicability of this defense. At trial, he did not put on evidence that he was unable to comply with the specific provisions of the court order, that he made a good faith effort to comply with the order, and that his failure to comply with it is not attributable to his fault.

We conclude that the evidence is legally and factually sufficient to support the trial court's finding that the father failed to comply with court-ordered services to obtain the return of his child. *See* TEX. FAM. CODE § 161.001(b)(1)(O). Accordingly, we overrule the father's challenge to the trial court's subsection (O) finding.

Due process requires that when a parent has raised the issue of insufficiency of the evidence to support the jury's findings under subsection (D) or (E), an appellate court must address those endangerment findings to ensure a meaningful appeal due to the collateral consequences of a finding under those subsections. *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). Due-process and due-course-of-law requirements also mandate that an appellate court detail its analysis for an appeal of termination of parental rights under subsections (D) or (E). *Id.* We therefore review the trial court's endangerment findings under those sections. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E).

## 2. Predicate Finding—Subsections 161.001(b)(1)(D) & (E)

The evidence was also legally and factually sufficient to support the trial court's endangerment findings under subsection (D) and (E). Section 161.001(b)(1)(D) provides that a court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(D). Section 161.001(b)(1)(E) provides that a court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(E).

The word "endanger" as used in section 161.001 "means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). In this context, endanger means to expose to loss or injury or to jeopardize. *Id.*; *see Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (endangerment includes jeopardizing a child's emotional or physical health); *accord In re A.J.H.*, No. 01-18-00245-CV, 2019 WL 190050, at *7–8 (Tex. App.—Houston [1st Dist.] Jan. 15, 2019, no pet.) (mem. op.).

13

Endangerment under subsection (D) arises from a child's environment and a parent's disregard for the potential for danger created by the environment. *A.J.H.*, 2019 WL 190050, at *7; *Jordan*, 325 S.W.3d at 721. Although "the focus of subsection (D) is on the child's living environment and not on the parent's conduct, parental conduct may produce an endangering environment." *In re M.T.W.*, No. 01-11-00162-CV, 2011 WL 6938542, at *12 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, no pet.) (mem. op.) (citing *Jordan*, 325 S.W.3d at 721). Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D). *See In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Endangerment under subsection (E) arises when a parent's course of conduct jeopardizes the child's emotional or physical health. *See A.J.H.*, 2019 WL 190050, at *8. This course of conduct includes acts, omissions, and failures to act, but it "must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent." *M.T.W.*, 2011 WL 6938542, at *12 (citing *Jordan*, 325 S.W.3d at 723).

**(1) The evidence was legally and factually sufficient to support the trial court's endangerment finding under subsection (D).**

On appeal, the father contests several of the court's evidentiary decisions. He contends that the only evidence supporting the trial court's finding under subsection

(D) was the removal allegations themselves. He argues that the removal allegations are "conclusory statements offering nothing more than speculation of harm." He argues that the trial court erred in admitting judgments from criminal convictions naming the father because there is insufficient information on the documents to prove that the father is the person named in them. He argues that the caseworker's testimony that the father had a prior parental termination based on subsection (D), (E), and (O) was erroneously admitted hearsay. Finally, he contends that the court admitted erroneous hearsay evidence when the Department's investigator testified that "it was reported that there was [sic] drugs in the home. Mom was manufacturing and selling meth." The father first objected based on hearsay and then, after the investigator responded, objected that his response was nonresponsive. The court overruled both objections.

The father's evidentiary arguments are unpersuasive. Reversal based on admissibility of evidence is not warranted unless the father shows the error amounted to such a denial of his rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *In re M.T.R.*, 579 S.W.3d 548, 569 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). "To put it another way, a successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted." *Texas Dep't of*

15

*Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). In making this determination, the court must review the entire record. *M.T.R.*, 579 S.W.3d at 569. The erroneous exclusion or admission of evidence is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment. *Id.*

The evidence that the father complains about on appeal was admitted elsewhere in the record without objection. When evidence identical or similar to the objected-to evidence is admitted elsewhere without objection, there is no harm. *In re R.H.W.*, 542 S.W.3d 724, 740 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Further, the trial court is the sole arbiter when assessing the credibility and demeanor of a witness. *H.R.M.*, 209 S.W.3d at 109.

As to the father's evidentiary complaint regarding the investigator's testimony, the caseworker testified without objection to the same or similar information about the father's drug use and the presence of drugs in the home. The investigator testified that both parents were incarcerated during the investigation into the neglectful supervision allegation. During the investigation, the mother was released. The investigator attempted to meet with the father during his incarceration, but the father refused to speak with him.

Without objection, the caseworker testified that Leah was removed from the house because the mother and the father were "active drug users and were using

16

drugs around the child." She added that the household "had drugs in it from the mother and father." She testified that the father had not taken any drug tests during the pendency of the case and because drug testing was a prerequisite to visits, he had not had any visits with Leah.

The father also complains that the criminal judgments admitted into evidence were erroneously admitted because there is insufficient identifying information to show that he is the person named in the judgments. The judgments were not the only evidence of the father's criminal history. The criminal convictions were admitted without objection as part of the family services plan. His criminal history included four convictions for theft of property between 2005 and 2014, and a recent arrest for possession of a controlled substance that led to incarceration at the time of the trial.

As to the father's prior parental termination case, there was clear and convincing evidence to support the trial court's finding on this predicate act without considering the caseworker's testimony regarding the father's prior termination. The judgment did not turn on this particular evidence. *Able*, 35 S.W.3d at 617.

In reviewing the record, we conclude that any error in the admission of these pieces of evidence was harmless and there was factually and legally sufficient evidence to support the trial court's finding under subsection (D). we overrule the father's challenge to the trial court's subsection (D) finding.

17

## (2) The evidence was legally and factually sufficient to support the finding of endangerment under subsection (E).

With regard to subsection (E) the father argues that the finding was "undoubtedly based primarily—if not exclusively—on [the father's] alleged criminal history." He contends that the Department failed to prove that he was the person named in the judgments of conviction admitted into evidence.

As explained above, the judgments of conviction were not the sole source in the record of the father's criminal history. The father's criminal history and substance abuse problem were detailed in the family services plan. Both the caseworker and the Department's investigator testified that there were drugs in the house with Leah and that both parents were using and selling drugs. The investigator testified that the father was incarcerated during his investigation. The caseworker testified about concerns that the father did not participate in the services required by the family services plan. A parent's efforts to improve or enhance parenting skills are relevant in determining whether a parent's conduct results in endangerment under subsection (E). *See S.R.*, 452 S.W.3d at 362 (citing *In re D.T.*, 34 S.W.3d 625, 640 (Tex. App.—Fort Worth 2000, pet. denied)). Failure to maintain stability endangers the child's physical and emotional well-being. *See In re A.B.*, 412 S.W.3d 588, 599 (Tex. App.—Fort Worth Aug. 2013, pet. denied) (parent's conduct that subjects child to life of uncertainty and instability endangers child's emotional and physical health). The record demonstrates that the father had been convicted of

possession of drugs and thefts on multiple occasions over the course of 10 years. Leah was removed from his care due to his use of drugs, and he was incarcerated on drug charges while she was in the Department's care. The father did not submit to any drug testing despite being ordered to do so, and he did not attend the substance abuse assessment set up for him by the Department prior to his incarceration.

The evidence is legally and factually sufficient to demonstrate that the father endangered Leah under subsection (E). TEX. FAM. CODE § 161.001(b)(1)(E). We overrule the father's issue related to this predicate act.[4]

**Conclusion**

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Justices Kelly, Hightower, and Farris.

---

[4] The father does not challenge the trial court's finding that termination was in Leah's best interest or the trial court's conservatorship findings. *See Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991) ("Grounds of error not asserted by points of error or argument in the court of appeals are waived.").