# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00231-CV

**F. H. and L. L., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 21-0063-CPS425, THE HONORABLE BETSY F. LAMBETH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

F.H. (Father) and L.L. (Mother) challenge the district court's order, following a bench trial, that terminated their rights to their one-year-old child G.M. (Child).[1] Father first argues that legally insufficient evidence supports the findings of four predicate grounds for termination. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (N), (O). Second, he argues that the evidence is factually insufficient to support the finding that termination is in the best interest of Child. *See id.* § 161.001(b)(2). Mother's appointed counsel has filed a brief concluding that Mother's appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738 (1967). We affirm.

---

[1] We refer to Child's family members by their initials or their relationship to Child. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

## BACKGROUND

The Department opened an investigation into Mother in August of 2020 upon receiving a report that she was using methamphetamine while caring for two children. In March of 2021, the Department gained temporary conservatorship of those children and petitioned to terminate her parental rights. Mother gave birth to Child the following month. After learning that Mother and Child both tested positive for methamphetamine at the birth, the Department removed Child and amended its petition to include Child and Father.[2] The district court subsequently adjudicated Father's paternity and severed the Department's claims pertaining to Child into a separate cause of action, which is the subject of this appeal.

The parties tried the case to the bench on April 4 and 19, 2022. The district court heard testimony from Father, Mother, Department employees Raven Akoma and Monica Ingalsbe, and the Court Appointed Special Advocate (CASA) for the children. Mother testified that she had previously used methamphetamine without problems but became addicted to it in 2020. She continued using methamphetamine throughout the case, including during her pregnancy with Child. She most recently used it "a few days" before trial. Ingalsbe testified that Mother missed most of the drug screenings required by her service plan. Mother tested positive for methamphetamine and amphetamines in October and November of 2020 and January of 2021.

Mother testified that Father was not aware of her frequent drug use. He did not find out until Mother gave birth to Child because she and Father were "never [in] a relationship" and he was not around her house "very often." Ingalsbe testified that she learned Father "was

---

[2] According to the Department's petition, the father of Mother's older children is deceased.

already involved with [Mother]" prior to the removal. Mother and the Department previously agreed to a safety plan stating that "the children were not to be around [Mother] unsupervised." Ingalsbe received a call from the school attended by one of Mother's older children, Z.O. The child had stated during school that "she hides in the closet at mommy's apartment when the lady [a Department representative] comes to visit and so whenever the lady knocks on the door she needs to be quiet." Ingalsbe spoke to Z.O., who stated that "mom's boyfriend" lived in the house. Ingalsbe identified the boyfriend as Father.

Ingalsbe testified that the Department removed the children from Mother because of the violations of the safety plan and the lack of another familial placement. Akoma testified that "there were no allegations made" against Father at the time but that the Department was concerned because of his criminal record and history with the Department. Specifically, the Department had opened an investigation into Father in 2015 after an altercation with his then-partner. Father allegedly threw a box of diapers and hit her in the head when she was holding their seven-month-old child. Akoma also testified that she asked Father at the initial meeting "to go do a drug test so we can rule out any drug concerns" but that he did not comply. Father has never taken a drug test to the Department's knowledge during the case.

Father confirmed Akoma's description of the fight that led to the 2015 Department investigation but denied that the victim was holding the infant at the time. Father also agreed that he had "plenty" of convictions, many involving family violence. Father was convicted in 2012 of assaulting his partner (the same one in the 2015 investigation) and was subsequently charged with assaulting her in 2014, 2016, and 2017. In January of 2017, Father agreed to plead guilty to assault family violence and serve three years of deferred-adjudication probation in return for dismissal of another pending charge. The trial court in that case revoked

his probation in December of 2017 and sentenced him to prison for three years. The district court admitted two judgments of conviction, a police complaint, and a charging instrument documenting these charges.[3]

Father testified that he was released in January of 2019 and began "selling drugs" to support himself and pay child support. He stopped in 2020 and enrolled in a program with the Texas Workforce Commission to help find employment. He lives in a "motel in Taylor" but was unable to provide the address. Father had lived with his mother and siblings following his release from prison but moved into the motel four months before trial after having a falling out with his family. Father confirmed his receipt of a service plan that required him to undergo a psychological evaluation, complete individual counseling, and undergo drug testing. Father admitted that he did not complete the evaluation, has not been successfully discharged from counseling, and has never taken a drug test. Regarding his refusal to drug test, he explained that he "had a question to why [he] was being accused of using drugs" when he had a problem with alcohol rather than drugs and that no one had explained the necessity of testing to him.

In addition to the requirements of the service plan, the court had ordered Father to pay $1,800 to cover the cost of a helmet Child needed for a medical condition. At a pretrial hearing, Father represented that he could pay that sum in three weekly installments of $600. The court ordered accordingly, but Father never paid any part of the sum. Father explained at trial that he intended to obtain the funds through a loan but was turned down.

---

[3] After the Department's counsel finished questioning Father about this criminal history, Father interjected that counsel had "missed a whole bunch of other ones." Asked to elaborate, he said: "Burglary of a building, open container, there's a PI, there's criminal mischief. She just named just the family violence, like is she trying to make a point or something?"

Father testified that he has seen Child twice since her birth, both times in visits facilitated by Child's previous foster parents. Father agreed that he was aware that the temporary orders in effect at the time prohibited him from seeing Child until he submitted to a drug test. Akoma testified that the Department was not aware of these visits and that Father has never participated in a visit with Child that the Department supervised.

Akoma testified that the Department recently moved Child into a new foster home. Child is "doing well, she's holding herself up, she [is] really content" with her new foster parents and "seems relaxed there with them." The CASA testified that Child's progress "has been absolutely remarkable." She was "very, very concerned initially about developmental delays and I haven't seen any of that recently which is impressive."

After closing arguments, the district court found with respect to Father that the Department had established four predicate grounds for termination and that termination is in Child's best interest. *See* Tex. Fam. Code. § 161.001(b)(1)(D), (E), (N), (O), (b)(2). Regarding Mother, the district court found that the Department had proven six predicate grounds for termination and that termination was in Child's best interest. *See id.* § 161.001(b)(1)(D), (E), (N), (O), (P), (R), (b)(2). These appeals followed.

## FATHER'S APPEAL

Father argues that the evidence is legally insufficient to support the district court's predicate findings and factually insufficient to support its finding that termination is in Child's best interest.

5

**Applicable Law**

"The United States Constitution and the Texas Constitution protect parents' rights to raise and nurture their children." *In re J.F.-G.*, 627 S.W.3d 304, 311 (Tex. 2021). A court may nonetheless terminate the parent-child relationship "if clear and convincing evidence supports that a parent engaged in one or more of the [statutorily] enumerated grounds for termination and that termination is in the best interest of the child." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam) (citing Tex. Fam. Code § 161.001(b)). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007. "This heightened proof standard carries the weight and gravity due process requires to protect the fundamental rights at stake." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

The heightened burden of proof "necessitates a commensurately heightened standard of review." *Id.* at 626. When the standard is clear and convincing, the "distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *Id.* at 630. "Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631. Factual-sufficiency review, in contrast, "requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* "In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder

6

could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.* The trier of fact is "the sole judge of the witnesses' credibility and the weight to be given to their testimony." *A.A. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00307-CV, 2021 WL 5893695, at *4 (Tex. App.—Austin Dec. 14, 2021, no pet.) (mem. op.).

**Predicate Grounds**

Father challenges the legal sufficiency of the evidence supporting the district court's findings that the Department established four predicate grounds for termination. *See* Tex. Fam. Code. 161.001(b)(1)(D), (E), (N), (O). We begin with his first two issues, which challenge the subsection (D) and (E) findings, because due process requires us to review the sufficiency of the evidence supporting those findings even if another predicate finding is sufficient to uphold the judgment. *See N.G.*, 577 S.W.3d at 237; *J.G. v. Texas Dep't of Fam. & Protective Servs.*, 592 S.W.3d 515, 523 (Tex. App.—Austin 2019, no pet.).

Termination of the parent-child relationship may be ordered under subsection (D) if clear and convincing evidence establishes that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," Tex. Fam. Code § 161.001(b)(1)(D), and under subsection (E) if the evidence establishes that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child," *id.* § 161.001(b)(1)(E). These grounds are intertwined; subsection (D) focuses on the child's environment—which includes the child's living conditions and the environment produced by the conduct of the parents or others in the home—and whether the environment

7

itself endangered the child, while subsection (E) focuses on the parent's conduct and whether the parent engaged in a voluntary, deliberate, and conscious course of conduct that endangered the child. *S.G. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00085-CV, 2021 WL 3437890 at *11 (Tex. App.—Austin Aug. 6, 2021, no pet.) (mem. op.); *see In re C.V.L.*, 591 S.W.3d 734, 750 (Tex. App.—Dallas 2019, pet. denied). Both subsections require proof of endangerment, which means exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being. *See Texas Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *A.C. v. Texas Dep't of Fam. & Protective Servs.*, 577 S.W.3d 689, 698–99 (Tex. App.—Austin 2019, pet. denied). A finding of endangerment requires more than the threat of metaphysical injury or possible ill effects from a less-than-ideal family environment, but the Department does not have to prove that the conduct was directed at the child or that the child suffered an actual injury. *See In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *A.C.*, 577 S.W.3d at 699.

Evidence that a "parent allowed a child to be around a parent or other persons using drugs, can support the conclusion that the child's surroundings endanger her physical or emotional well-being under subsection (D) and can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being under subsection (E)." *In re C.V.L.*, 591 S.W.3d at 751. Father does not dispute that Mother's methamphetamine use endangered Child but argues that he was unaware of it until Child's birth. To support this, he points to his testimony that he "didn't know [Mother] was doing drugs" until Child's birth and Mother's testimony that he "didn't know about the meth issue." Father acknowledges Ingalsbe's testimony that he was involved with Mother before Child's birth but contends that it amounts to "speculation" because "no one from the Department [] ever contacted [him]" before Child's

8

removal. Father's argument is, in essence, that the district court could not credit Ingalsbe's testimony because it is not direct evidence.

We disagree. "[D]irect evidence is not necessarily required" to support a predicate finding that a parent endangered a child. *In re R.H.W. III*, 542 S.W.3d 724, 734 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.) ("Circumstantial evidence may be sufficient to support termination."). Circumstantial evidence is "indirect evidence that creates an inference to establish a central fact." *R.H.W.*, 542 S.W.3d at 734 (citing *In re Lipsky*, 460 S.W.3d 579, 588–89 (Tex. 2015) (orig. proceeding)). Ingalsbe's testimony is circumstantial evidence that Father lived with Mother during the case, including during her pregnancy. And as "the sole judge of the witnesses' credibility and the weight to be given to their testimony," *A.A.*, 2021 WL 5893695, at *4, the district court could credit Ingalsbe's testimony that Father lived with Mother and disregard the contrary testimony.

Father's awareness of Mother's drug use does not automatically equate to endangerment. The supreme court recently stated that while "a parent's knowledge of the other parent's drug use during pregnancy and corresponding failure to attempt to protect the unborn child from the effects of that drug use" can endanger the unborn child, it did not "endorse attributing any and all known dangers posed to a child during the mother's pregnancy to the other parent." *In re J.W.*, 645 S.W.3d 726, 749–50 (Tex. 2022). As in many parental-termination cases, "the inquiry is necessarily dependent on the facts and circumstances." *Id.* at 750. The particular facts and circumstances of the case here support a finding of endangerment: while Mother was receiving family-based services from the Department because she was using methamphetamine while caring for her children, Father was living in the house.

9

Akoma testified that she tried several times during this period to get Mother admitted to inpatient drug treatment and that her pregnancy made the need for treatment particularly urgent. Mother did not receive impatient treatment, did not take almost any of the drug tests required of her during this time, and attempted to hide her noncompliance with the service plan from the Department. The district court could reasonably infer that Father was aware of Mother's drug use and the effect it could have on Child and was having on Mother's older children. Father's failure to make any attempt to alert the Department or help Mother receive substance abuse treatment supports the district court's endangerment findings. *See id.* at 750; *In re J.W.S.*, No. 06-14-00018-CV, 2014 WL 3013352, at \*6 (Tex. App.—Texarkana July 2, 2014, no pet.) (mem. op.) (holding that evidence was sufficient for the trial court to find endangering conduct where father knew of mother's drug use during pregnancy but did nothing to stop it).

Additional evidence supports the endangerment findings. "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re J.O.A.*, 283 S.W.3d 336, 345 n.4 (Tex. 2009). Endangering conduct "may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage." *Id.* at 345. Father's sale of illegal drugs in the year prior to Child's birth qualifies as endangering conduct. *See J.F.-G.*, 627 S.W.3d at 315 (stating that parent's "sale of illegal drugs qualifies as endangering conduct"). Father's repeated refusals to drug test—starting when the Department first contacted him and continuing up to trial—support an inference that he was using drugs during that time. *See J.K. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-18-00814-CV, 2019 WL 1646268, at \*2 (Tex. App.—Austin Apr. 17, 2019, pet. denied) (mem. op.) ("A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs." (citing *In re E.M.*,

10

494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied))). Evidence that a "parent continued to use illegal drugs when she knew parental rights were in jeopardy 'is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being.'" *See J.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00325-CV, 2021 WL 5456653, at *6 (Tex. App.—Austin Nov. 17, 2021, pet. denied) (quoting *In re K.A.C.*, 594 S.W.3d 364, 373 (Tex. App.—El Paso 2019, no pet.))).

Reviewing the record under the applicable standard, we conclude that a reasonable factfinder could form a firm belief or conviction that Father knowingly allowed Child to remain in dangerous conditions and knowingly placed her with a person—Mother—who engaged in a dangerous course of conduct. *See* Tex. Fam. Code. § 161.001(b)(1)(D), (E). We overrule Father's first and second issues. We do not reach his third and fourth issues, which challenge the district court's other predicate findings. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (noting that Section 161.001 requires proof of only one statutory predicate to support termination).

**Best Interest**

Father argues in his final issue that there is factually insufficient evidence to support the best-interest finding. The best-interest analysis "is child-centered and focuses on the child's well-being, safety, and development." *A.C.*, 560 S.W.3d at 631. "[T]here is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). To determine whether termination is in the best interest of a child, we consider the non-exclusive *Holley* factors:

• the child's wishes;

11

• the child's present and future emotional and physical needs;

• any emotional and physical danger to the child now and in the future;

• the parental abilities of the individuals seeking custody;

• the programs available to assist the individuals seeking custody to promote the best interest of the child;

• the plans for the child by the individuals or agency seeking custody;

• the stability of the home or proposed placement;

• parental acts or omissions which may indicate that the existing parent-child relationship is improper; and

• any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). A best-interest finding does not require proof of a specific factor or set of factors as a condition precedent to termination. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

We begin with Child's wishes. Akoma testified that Child was one year old at the time of trial "and essentially she doesn't know her dad at all." Father testified that he has seen Child twice since her birth. Akoma and the CASA both testified that Child has adjusted well to her new foster parents. Although Child was too young to express her wishes, the district court could consider that Child is bonded with her foster parents, is well cared for, and has essentially no relationship with Father. *See S.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00039-CV, 2020 WL 3892796, at \*16 (Tex. App.—Austin July 10, 2020, no pet.) (mem. op.) (examining evidence that children were bonded to foster parents and had spent minimal time with birth parents).

Turning to Child's physical and emotional needs and any emotional or physical risks to her now and in the future, "it is well settled that stability and permanence are paramount considerations in evaluating the needs of a child." *N.K. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00028-CV, 2022 WL 2673236, at *8 (Tex. App.—Austin July 12, 2022, no pet. h.) (mem. op.) (citing *In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.), *Rios v. Texas Dep't of Fam. & Protective Servs.*, No. 03-11-00565-CV, 2012 WL 2989237, at *9 (Tex. App.—Austin July 11, 2012, no pet.) (mem. op.)). Far from demonstrating a life of stability, Father's extensive criminal history raises the possibility that he would engage in criminal activity in the future and subject Child to a life of uncertainty as to his role in her life. *See J.G.*, 592 S.W.3d at 525–26 ("Routinely subjecting a child to the probability that she will be left alone because her parent is in jail, endangers the child's physical and emotional well-being." (citing *In re J.S.*, 584 S.W.3d 622, 635 (Tex. App.—Houston [1st Dist.] 2019, no pet.)). Moreover, Father's inability to obtain employment since his release from prison in 2019 and his unstable housing situation suggests he will not be able to provide for Child's basic needs in the future. *See S.C.*, 2020 WL 4929790, at *4 ("[A] parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs." (citing *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied))).

With respect to the parenting abilities of any persons seeking access to Child, Father's criminal record and incarceration reflect negatively on his parenting abilities. *See In re A.M.*, No. 02-16-00208-CV, 2016 WL 7046858, at *4 (Tex. App.—Fort Worth Dec. 2, 2016, no pet.) (mem. op.) (observing that parent's repeated incarcerations and arrests "suggest that his parenting skills are seriously suspect"). Also, Father testified that he did not complete parenting classes despite knowing that doing so was expected of him and he did not complete most of his

service plan. On the other hand, the CASA testified that Child's new foster family are meeting her needs. Despite initial concerns about developmental delays, Child has displayed "absolutely remarkable" progress under their care.

Regarding the plans for the children, Akoma testified that the Department plans to leave Child in her current placement. That family has agreed to facilitate visits between Child and her half siblings. The Department's long-term plan is for the family to adopt Child. Father plans for Child to live with his parents while he "finishe[s] college" and finds a "stable place" for them to live. Akoma testified that the Department was currently performing a home study on Father's parents' house and that the results were expected shortly after the end of trial.

Finally, we consider any evidence that the parent-child relationship is improper and any excuses for the parent's conduct. Father's undisputed history of criminal activity and imprisonment are indicators of an improper relationship, *see N.K.*, 2022 WL 2673236, at *9, as is the evidence that he was aware of Mother's drug use while she was pregnant and caring for other children, *see J.W.*, 645 S.W.3d at 749–50.

Father nevertheless argues that there was no reason to terminate at this juncture because the home study results were forthcoming and he "could have been given more time by the court to complete services." This is especially true, he reasons, because Child's future with the new foster family is uncertain and Father did not begin to engage with services until his parentage was adjudicated. He contends that the "strong presumption" in favor of preserving the parent-child bond requires this result. *See R.R.*, 209 S.W.3d at 116. Although courts presume that preserving the parent-child relationship is in the best interest of the child, it is the "child's need for permanence through the establishment of a stable, permanent home" that is "the paramount consideration in a best-interest determination." *E.N. v. Texas Dep't of Fam.*

14

*& Protective Servs.*, No. 03-21-00014-CV, 2021 WL 2460625, at \*8 (Tex. App.—Austin June 17, 2021, no pet.) (mem. op) (citing *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)).  The district court could reasonably conclude on this record that Father would not be able to provide that stability.  *See J.G.*, 592 S.W.3d at 525 (explaining that "trier of fact may measure a parent's future conduct by his past conduct" in best-interest determination).

Father also urges that a child's "best interest is not the only concern" in a termination proceeding and that his fundamental right to Child precludes termination based on this record.  Even though courts must "recognize the constitutional underpinnings of the parent–child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *A.C.*, 560 S.W.3d at 630 (citing *C.H.*, 89 S.W.3d at 26).  Considering the entire record, we conclude that the disputed evidence is not so significant that the factfinder could not have formed a firm belief or conviction that termination is the best interest of Child.  We overrule Father's final issue.

## MOTHER'S APPEAL

Mother's court-appointed counsel has filed a motion to withdraw accompanied by a brief concluding that any appeal is frivolous and without merit.  *See Anders*, 386 U.S. at 744 (stating that court-appointed counsel who believes appeal is wholly frivolous should file motion to withdraw "accompanied by a brief referring to anything in the record that might arguably support the appeal"); *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeals from termination of parental rights).  Counsel's brief meets the requirements of *Anders* by presenting a professional evaluation of the record demonstrating

that there are no arguable grounds for reversal to be advanced on appeal. *See* 386 U.S. at 744; *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646–47 (Tex. App.—Austin 2005, pet. denied) (applying *Anders* procedure in parental-rights termination case). Counsel has certified to this Court that he provided Mother with a copy of the *Anders* brief and motion to withdraw as counsel and a notice of her right to file a pro se brief. Mother did not file a pro se response.

Upon receipt of an *Anders* brief, we must conduct a full examination of the proceedings to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80 (1988). After reviewing the record and counsel's brief, we find nothing that would arguably support a meritorious appeal. We thus agree with counsel that this appeal is frivolous and without merit.

We nevertheless deny counsel's motion to withdraw. In *P.M.*, the supreme court explained that a parent's right to counsel in termination suits extends to "all proceedings in [the Supreme Court of Texas], including the filing of a petition for review." *See* 520 S.W.3d at 27. Accordingly, counsel's obligation to Mother has not yet been discharged. *See id.* If Mother, after consulting with counsel, desires to file a petition for review, counsel should timely file with the high court "a petition for review that satisfies the standards for an *Anders* brief." *See id.* at 27–28.

## CONCLUSION

We affirm the district court's order of termination.

_____

Edward Smith, Justice

16

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed:   September 29, 2022