

## Fourth Court of Appeals

### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00588-CV

**IN THE INTEREST OF I.R.D.** and C.R.D., Children

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-00378
Honorable Raul Perales, Judge Presiding

Opinion by:  H. Todd McCray, Justice

Sitting:  Irene Rios, Justice
Lori Massey Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: March 4, 2026

AFFIRMED

Mother and Father appeal the trial court's order terminating their parental rights to their two children, I.R.D. and C.R.D.[1] Mother and Father challenge the legal and factual sufficiency of the evidence supporting the trial court's best interest determinations under section 161.001(b)(2) of the Texas Family Code. Because we conclude the evidence is sufficient to support the trial court's best interest finding, we affirm the judgment of termination.

---

[1] To protect the privacy of the minor children, we refer to them by initials. TEX. FAM. CODE § 109.002(d). TEX. R. APP. P. 9.8(b)(c).

BACKGROUND

The Department of Family Protective Services initially became involved in the underlying case in March 2023 when it received a referral regarding Mother testing positive for illegal drugs when she gave birth to C.R.D. Mother had a history with the Department involving the termination of her rights to two of her older children due to substance abuse.

When the case was opened, the children were living with Mother and Father at the home of their paternal grandmother. In October 2023, an incident occurred in which Father and Mother assaulted the grandmother, resulting in visible injuries to her head and face. Law enforcement was not involved, but after the assault occurred, the grandmother no longer wanted Father or Mother in her home.

In December 2023, both parents were charged with possession of methamphetamine. As a result, family-based safety services were offered to Mother and Father including an assessment for substance abuse treatment. Mother agreed to the assessment, which led to a recommendation that she complete eight weeks of outpatient services. Although Mother did participate in portions of the services, her participation was inconsistent as she failed to attend individual and group sessions as scheduled. She also either refused to submit to drug tests or missed the scheduled appointments. Father refused to engage in any of the family safety services offered to him.

As a result of these actions, the Department was concerned that Mother and Father were still using substances. The Department was further concerned that they continued to engage in behavior that was not safe for the children, that they continued to maintain a relationship with each other despite a history of domestic violence, and that they continued to put the children in harm's way by not providing their basic needs. The Department was also troubled by the fact that violence had occurred between household members which had placed the wellbeing of the children at risk.

Based on these concerns, the children were removed from the home and placed with their maternal grandmother. Both parents were provided with a joint family service plan. Among other things, the service plan included a requirement that Mother and Father participate in Family Drug Court. However, both parents were expelled from the program for lack of compliance.

In August 2025, the trial court conducted a bench trial at which six witnesses testified: Department caseworkers Amber Sixtos, Jennifer McMurray, and Krystal Salazar, child advocate Helen McMahon, Mother, and the paternal grandmother.

Following trial, the court terminated Mother's parental rights pursuant to section 161.001(b)(E) and (P) of the Texas Family Code.[2] The court terminated Father's rights pursuant to section 161.001(b)(E), (N), and (P) of the Texas Family Code.[3] The court further found that termination of both Mother's and Father's parental rights was in the children's best interest pursuant to section 161.001(b)(2) of the Texas Family Code.

## STANDARD OF REVIEW

To terminate parental rights pursuant to Family Code 161.001, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b).

---

[2] The court found that Mother:
(1) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children. TEX. FAM. CODE § 161.001(b)(1)(E).
(2) used a controlled substance in a manner that endangered the health or safety of the children, and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance. TEX. FAM. CODE § 161.001(b)(1)(P).

[3] The court found that Father:
(1) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children. TEX. FAM. CODE § 161.001(b)(1)(E).
(2) constructively abandoned the children. TEX. FAM. CODE § 161.001(b)(1)(N).
(3) used a controlled substance in a manner that endangered the health or safety of the children, and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance. TEX. FAM. CODE § 161.001(b)(1)(P).

Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007. This heightened standard of proof necessarily extends to appellate review in parental termination cases. *In re A.C.*, 560 S.W.3d 624, 630-31 (Tex. 2018); *In re G.M.M.*, 721 S.W.3d 679, 683 (Tex. App. –San Antonio 2025, no pet.).

When reviewing the sufficiency of the evidence, we apply well established standards of review. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (conducting a factual sufficiency review); *In re J.P.B.* 180 S.W. 3d 570, 573 (Tex. 2005) (per curiam) (conducting a legal sufficiency review). In doing so, we recognize that the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024); *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021).

In this case, Mother and Father do not contest the trial court's findings regarding predicate grounds. Instead, they focus their challenge on the best interest findings of the trial court, arguing that the evidence is both legally and factually insufficient to support a finding that termination of their parental rights is in the children's best interest. We therefore treat the unchallenged predicate grounds as binding and limit our review to the best interest determination. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018); *In re K.G.S.*, No. 04-25-00254-CV, 2025 WL 2408553, at *2 (Tex. App.– San Antonio Aug. 20, 2025, pet. denied) (mem op.).

BEST INTEREST

When considering the best interests of a child in the context of involuntary parental termination, we recognize the existence of a strong presumption that favors preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). At the same time, the Texas Family Code presumes that prompt and permanent placement of the child in a safe environment is

in the child's best interest. TEX. FAM. CODE § 263.307(a). The Department must rebut the first presumption and satisfy the second with clear and convincing evidence. *In re E.J.M.*, 673 S.W.3d 310, 332 (Tex. App. –San Antonio 2023, no pet.)

To determine whether a parent is willing and able to provide the child with a safe environment, we consider the non-exclusive list of statutory factors set forth in the Texas Family Code.[4] TEX. FAM. CODE § 263.307(b). The Texas Supreme Court has also provided a similar framework[5] to consider in determining a child's best interest. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Neither the statutory factors nor the *Holley* factors are exhaustive, and "(e)vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.–San Antonio July 25, 2018, pet. denied) (mem. op.).

In evaluating a child's best interest, courts may consider circumstantial evidence, subjective factors, and the totality of the evidence along with direct evidence. *In re B.R.*, 456 S.W. 3d 612, 615 (Tex. App.–San Antonio 2015, no pet.); *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.–

---

[4] These factors include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills... ; and (13) whether an adequate social support system ... is available to the child. TEX. FAM. CODE ANN. § 263.307(b).

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 371–72; *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

San Antonio, 2013, pet. denied). A trier of fact may also measure a parent's future ability to meet a child's needs by the parent's past conduct. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.–San Antonio 2013, pet. denied).

Evidence that proves a statutory ground for termination is likewise probative on the issue of best interest. *Id.* Accordingly, the trial court's findings under subsection (E) and (P) as to Mother and (E), (N) and (P) as to Father may serve as evidentiary support for the court's best-interest finding. *See id*.

A. Substance Abuse

One of the factors to consider in determining whether the child's parents are willing and able to provide the child with a safe environment is "whether there is a history of substance abuse by the child's family or others who have access to the child's home[.]" *See* TEX. FAM. CODE § 263.307(b)(8) (stating a parent's history of substance abuse is a factor considered by the trial court in determining the children's best interests); *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (noting "endangering conduct is not limited to actions directed toward the child."). Substance abuse is relevant to a best interest analysis because illegal drug use creates the possibility that the parent will be impaired or imprisoned and thus incapable of parenting. *In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App. –Houston 2015, no pet).

The court heard testimony that Mother had a history with the Department in which her parental rights to her older children were terminated due to her drug use. Although Mother denied using drugs at the time of C.R.D.'s birth, the trial court heard testimony that she tested positive for multiple substances when C.R.D. was born. Mother also admitted that she was arrested for possession of methamphetamines while this case was pending. The court heard further testimony that Mother tested positive for illegal substances while this case was pending.

The Department also expressed concern regarding Mother's drug testing compliance. For example, caseworker Krystal Salazar testified that the trial court ordered Mother to submit to a hair follicle test within 48 hours in July 2025. Mother understood that failure to test as ordered would result in the test being presumed positive, yet she did not comply. Although she testified that she obtained a hair-follicle test from a private company, she offered no results or other documentation. Under these circumstances, the trial court could reasonably infer that Mother's failure to appear for testing reflected continued drug use. *See In re A.M.I.*, 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App. –San Antonio Dec. 11, 2019, pet. denied) (mem. op.); *In re T.N.J.J.*, No. 04-19-00288-CV, 2019 WL 6333470 at *5 (Tex. App. –San Antonio Nov. 27, 2019, not pet.) (mem. op).

In addition to the evidence concerning continued drug use, the Department presented evidence regarding Mother's non-compliance with drug treatment. Although Mother attended some substance abuse sessions, her overall compliance with the service plan was inconsistent. While she participated in the Family Drug Court from May 2024 until March 2025, she was expelled from the program after testing positive for drugs in February 2025. During the program, Mother completed outpatient substance abuse counseling with New Choices, but she completed no other services. Following her expulsion, Mother was unsuccessfully discharged from additional outpatient substance abuse services due to inconsistent attendance. Although Mother testified that she had completed substance abuse treatment, when weighed against the contradicting testimony, the trial court was not required to credit that testimony. *See R.R.A.*, 687 S.W.3d at 276; *J.F.-G.*, 627 S.W.3d at 317.

The evidence supports a conclusion that Mother's history of substance abuse, repeated positive tests, and failure to engage in treatment indicate a high likelihood of continued drug abuse,

creating an impermissible risk of physical and emotional danger to the children and impairing Mother's ability to meet their needs.

The court also heard evidence regarding Father's substance abuse and refusal to engage in services. When the Department initially visited the home, Father was argumentative and was asked to leave to avoid escalating the situation. He continued to remain uncooperative and, as the case progressed, Father was arrested for possession of methamphetamines, felony credit card abuse and DWI.

Although Father initially participated in the Family Drug Court and completed a psychological assessment, he refused to complete additional services. He was offered substance abuse counseling and domestic violence classes but did not engage beyond the initial assessment. Salazar testified that, according to Mother, Father was "still an active user."[6] Although Father submitted to several drug tests during the program, he was expelled from the Family Drug Court program for nonparticipation. After his expulsion, Father ceased to engage in Department-ordered services and could not be located for eleven months. Although Father submitted one drug test once he was located, the evidence is undisputed that Father did not begin, much less complete, substance abuse treatment or comply with ongoing drug testing.

From this evidence, the trial court could reasonably infer that Father continued to use drugs during the pendency of this case. *See R.R.A.*, 687 S.W.3d at 280-81; *J.F.-G.*, 627 S.W.3d at 317. The trial court was entitled to disbelieve any claim of sobriety and to infer that Father's prolonged refusal to test or engage in services reflected ongoing and unresolved drug use. *See id*. Based on this inference, the evidence supports the court's determination that Father's continued abuse of

---

[6] Mother's statement was unobjected to hearsay that became evidence for all purposes. *See In re R.H.W. III*, 542 S.W.3d 724, 734 (Tex. App. –-Houston, 2018, no pet.) (finding "[u]nobjected to hearsay is, as a matter of law, probative evidence under Texas Rule of Evidence 802"); *In re R.H.*, No. 02-20-00396-CV, 2021 WL 2006038, at *12 (Tex. App. –Fort Worth May 20, 2021, no pet.) (mem. op.) (noting trial court can consider unobjected to hearsay).

drugs, like Mother's, posed an impermissible risk of physical and emotional danger to the children and impaired his ability to provide a safe and stable environment. *See In re K.G.S.*, No. 04-25-00254-CV, 2025 WL 2408553, at *3 (Tex. App.—San Antonio Aug. 20, 2025, pet. denied) (mem. op.) ("[b]ecause drug use can destabilize the home and expose children to physical and emotional harm if not resolved, evidence of drug use weighs in favor of termination").

Mother's and Father's drug use, refusal to submit to drug testing, and failure to participate in drug treatment during the pendency of this case weigh heavily in favor of the trial court's best interest finding in light of multiple *Holley* factors, including the emotional and physical danger to the children, parental abilities, the stability of the home, and the propriety of the existing parent-child relationship. *See Holley*, 544 S.W.2d at 371-72.

## B. Domestic Violence

Another factor to consider in determining whether parents are willing and able to provide their children a safe environment is "whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home[.]" *See* TEX. FAM. CODE § 263.307(b)(7); *J.O.A.*, 283 S.W.3d at 345 (noting endangering conduct is not limited to actions directed toward the child); *In re E.J.C.T.*, No. 04-24-00663-CV, 2025 WL 871627, at *3 (Tex. App.—San Antonio Mar. 19, 2025, no pet.) (mem. op) (concluding evidence of the parent's history of domestic violence supports the trial court's best interest finding).

In this case, the court heard evidence that Father and Mother physically assaulted the paternal grandmother while the children were present in the home. Although law enforcement was not called, Caseworker Amber Sixtos testified that she observed significant injuries to the grandmother's head and face. Grandmother explained that she did not involve law enforcement because she feared the impact on the children. After the assault, the grandmother consulted an

attorney and attempted to contact the justice of the peace to pursue an eviction because she no longer wanted Father or Mother in the home.

The trial court also heard testimony that the maternal grandmother, who is the current caregiver, has received threatening phone calls and text messages from Father. Father admitted sending the messages, but he denied that they were threatening. Salazar testified that law enforcement was notified because of safety concerns for the maternal grandmother. Salazar also declined to discuss potential permanent placements for the children in open court out of concern for the safety of those individuals.

Further, neither Father nor Mother fully engaged in the domestic violence classes that were part of their service plan through the Family Drug Court program. During trial, the court heard testimony that Mother had completed a violence intervention program but she failed to submit a certificate of completion to the Department. Based upon this evidence, the trial court could have reasonably concluded that the children were exposed to domestic violence and ongoing criminal conduct that placed them at risk of physical and emotional harm. *See J.O.A.*, 283 S.W.3d at 345; *In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at *7 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (emphasizing that a parent's violent conduct can produce an environment that endangers a child's well-being).

This conclusion weighs in favor of the trial court's best interest finding when considered under multiple *Holley* factors, including the children's emotional and physical needs, the risk of emotional and physical danger to the children, parental abilities, and the stability of the home. *See Holley*, 544 S.W.2d at 371-72.

CONCLUSION

Having reviewed the record[7] in light of the *Holley* and statutory factors and having considered all the evidence under the appropriate standards of review, we conclude the trial court could have reasonably formed a firm conviction or belief that termination of Mother's and Father's parental rights was in I.R.D.'s and C.R.D.'s. best interest. Likewise, the evidence weighing against termination is not so significant to conclude that the trial court's decision was unreasonable. We therefore hold the evidence is legally and factually sufficient to support the trial court's best interest findings and overrule Mother's and Father's sole point of error. The order of termination is affirmed.

H. Todd McCray, Justice

---

[7] We note that the same evidence that supported the trial court's findings under subsection (E), (N), and (P) also support the trial court's best-interest finding. *See C.H.*, 89 S.W.3d at 28; *see also In re A.B.S.*, No. 04-19-00651-CV, 2020 WL 806950, at *1 (Tex. App.—San Antonio Feb. 19, 2020, no pet.) (explaining that in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by her past conduct).